**STERLING COLORADO BEEF, and Employer's Unity, Inc., Petitioners,**

v.

**Mike L. BACA, Gary B. Rose, individually and as members of the Industrial Commission of the State of Colorado, the Industrial Commission of the State of Colorado, Charles McGrath, Director of the Division of Labor, and James E. Bowles, Respondents.**

**No. 84CA1269.**

Colorado Court of Appeals, Div. IV.

March 21, 1985.

Glasman, Jaynes & Carpenter, James L. Carpenter, Denver, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for respondent Industrial Com'n.

Bristol & Friend, P.C., Steven R. Bristol, Greeley, for respondent James E. Bowles.

SILVERSTEIN *, Judge.

Sterling Colorado Beef Company (Sterling) seeks review of the award of work-

---

* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* Art. VI, Sec. 5(3)

and § 24–51–607(5), C.R.S. (1982 Repl.Vol. 10).

men's compensation benefits for temporary partial disability to James E. Bowles (claimant) under § 8–51–103, C.R.S. We affirm the award.

Claimant was injured on or about January 14, 1981, and was earning $8.20 per hour at that time as a base wage. Additionally, for several months prior to his injury, claimant had been earning time and one-half for considerable overtime work. Claimant returned to work in a light duty capacity on April 6, 1981, at a reduced hourly rate and remained in this position through July 30, 1982. Claimant received temporary partial benefits during this period based upon his average weekly wage on the date of the injury.

The sole issue before us is the calculation of the correct temporary partial disability rate. Sterling asserts that during the period claimant received temporary partial benefits, Sterling experienced an "economic slow-down" and was required to reduce the number of hours worked by employees of claimant's job classification. Sterling argues that since § 8–51–103, C.R.S., fixes temporary partial disability benefits at a percentage of an employee's "earning capacity," the hearing officer should not have ruled solely on claimant's weekly wage, but rather should have calculated benefits taking into account the reduced employee income caused by the "economic slow-down." We disagree.

In construing the predecessor of § 8–51–103, C.R.S., the Supreme Court held that the term "earning capacity" was intended by the General Assembly to mean the money rate at which the employee's services were recompensed at the time of the accident. *State Compensation Insurance Fund v. Lyttle*, 151 Colo. 590, 380 P.2d 62 (1963). Since this statutory term has received a definitive judicial construction and has been subsequently reenacted in the same form, we decline to reconstrue its meaning. *See In re Petrafeck v. Industrial Commission*, 191 Colo. 566, 554 P.2d 1097 (1976). In addition, § 8–47–101, C.R.S., specifies that the average weekly wage of the injured employee shall be used as the basis to compute compensation payments. It is thus clear that it was the legislative intent to use the average weekly wage at the time of the injury as the basis for determining benefits throughout the Workmen's Compensation Act. *See Murphy v. Ampex Corp.*, (Colo.App. No. 84CA0985, March 7, 1985).

Accordingly, the order is affirmed.

ENOCH, C.J., and HODGES, J., concur.