AVALANCHE INDUSTRIES, INC.; Great States Insurance Company c/o Colorado Insurance Guaranty Association; and Western Guaranty Fund, Petitioners

v.

Gladys Louise CLARK and Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 07SC255.

Supreme Court of Colorado, En Banc.

Dec. 15, 2008.

As Modified on Denial of Rehearing Jan. 20, 2009.*

* Justice Rice, Justice Coats, and Justice Eid would grant the Petition.

McElroy, Deutsch, Mulvaney & Carpenter, LLP, Thomas L. Kanan, C. Adam Foster, Denver, Colorado, Attorneys for Petitioners.

Heuser & Heuser, L.L.P., Gordon J. Heuser, Colorado Springs, CO, Attorneys for Respondent Gladys Louise Clark.

John W. Suthers, Attorney General, Mark N. McMullen, Assistant Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent Industrial Claim Appeals Office.

Harvey D. Flewelling, Denver, Colorado, Attorney for Amicus Curiae Pinnacol Assurance.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

In this workers' compensation case, we affirm *Avalanche Industries, Inc. v. Industrial Claim Appeals Office*, 166 P.3d 147 (Colo.App.2007). The court of appeals correctly upheld the decisions of the Industrial Claims Appeals Office ("ICAO") and administrative law judge ("ALJ"), that determined a claimant's average weekly wage ("AWW") for purposes of a disability award pursuant to the discretionary exception established in section 8–42–102(3), C.R.S. (2008). The case involves two issues: (1) whether the AWW should be based on the salary that a claimant was earning at an employer subsequent to the original accident; and (2) whether the AWW should include the cost of continuing healthcare from the subsequent employer pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 26 U.S.C. § 4980B (2006); 29 U.S.C. § 1161–1167 (2006); 42 U.S.C. § 300bb–1 (2006). We answer both issues in the affirmative and therefore affirm the court of appeals' decision.

## II. Facts and Procedural History

While working as a secretary at Avalanche, Respondent Gladys Louise Clark suffered a work-related accident in 2000. This accident resulted in a workers' compensation award for permanent partial disability, rated by an

independent medical examination as a twelve-percent whole person impairment resulting from the injury of her lumbar spine. Avalanche admitted to an AWW of $415.63 based on her salary at the time, and the claim was closed.

While her claim was pending, Clark left Avalanche for a new employer. At that time, Avalanche informed her that her group health coverage would terminate but, if she paid $78.90 per week, she could continue to receive health benefits from Avalanche under COBRA. Clark was precluded from opting in to this coverage, however, because her new employer provided her insurance.

In 2001, Clark began working for her most recent employer, Blair College, as a financial aid officer. Two years later, she properly petitioned to reopen her claim pursuant to section 8–43–303(1), C.R.S. (2008), because her physical condition had worsened as a result of the accident she suffered at Avalanche. After an evidentiary hearing, the ALJ concluded that Clark's condition had in fact worsened and granted the petition to reopen her claim.

According to the stipulated facts, in 2005, Clark's authorized treating physician took her off work due to her disability, and Clark has remained off work since. When she was taken off work, her weekly wage was $625. Blair College, like Avalanche, advised Clark of her COBRA right to continue the college's group health care benefits after her employment at the college ended. Her initial cost would be $64.60 per week but, once she exhausted her available leave under the Family and Medical Leave Act, see 29 U.S.C. §§ 2601–2654 (2006), her cost to continue the coverage would increase to $178.76 per week.

At the subsequent hearing on the issue of Clark's AWW, the parties stipulated to the facts and called no witnesses; instead, each presented an argument to the ALJ regarding the appropriate determination of her AWW. Avalanche, citing the default provision for calculating a claimant's AWW found in section 8–42–102(2), C.R.S. (2008), argued that Clark was entitled to an AWW based on her earnings at Avalanche at the time of the accident, and that her AWW could not include the cost of health insurance benefits

under COBRA because she had not previously sought those benefits from Avalanche. Clark, on the other hand, argued that the default provision would yield an unfair result, and that her AWW should be based on the salary she was earning from Blair College before being forced to resign and should include COBRA coverage at the amount it would actually cost her.

The ALJ agreed with Clark. He based her AWW on her salary at Blair College and, as a result, awarded an AWW of $625 plus the cost of her COBRA benefits. She would thus receive an AWW of $689.60 for the first twelve weeks while she could take medical leave, and then an AWW of $803.76 thereafter. This AWW would then be used to calculate her benefit award, pursuant to the statute. See §§ 8–42–105(1), –106(1), – 107(8)(d), –111(1), C.R.S. (2008).

Avalanche appealed to the ICAO, which affirmed the ALJ's ruling. Avalanche then appealed to the court of appeals, which also affirmed in a divided opinion. Avalanche Indus., 166 P.3d at 149. The majority found that the ICAO and the ALJ had properly calculated Clark's AWW based on her most recent salary and health insurance cost. Judge Bernard dissented in part. While agreeing with the majority that a claimant can reopen her claim when her physical condition worsens, he concluded that the discretionary exception for calculating a worker's AWW is necessarily tied to her compensation at the time the accident occurred, not her compensation at the time the award was reopened. Judge Bernard also declined to join the majority in upholding the ALJ's decision to base claimant's cost for COBRA benefits on her most recent employer's rates.

### III. Analysis

#### A.

The calculation of an injured worker's AWW is essential to determine the award of workers' compensation benefits. Section 8–42–102(1) describes the AWW as "the basis upon which to compute compensation payments." § 8–42–102(1), C.R.S. (2008). For example, permanent total and temporary disability benefit awards are calculated as a

certain percentage of the worker's AWW subject to weekly maximum benefits specified in the statute. §§ 8–42–105(1), – 106(1), –111(1); see also § 8–42–107(8)(d) (establishing permanent partial disability benefit awards as the percentage of the AWW multiplied by various factors including the medical impairment rating).

Subsections (2) and (3) of section 8–42–102 set forth alternative methods of computing an injured worker's AWW. In this opinion, we describe subsection (2) as "the default provision" and subsection (3) as "the discretionary exception."

The default provision requires the AWW to be calculated "upon the monthly, weekly, daily, hourly, or other remuneration" received by the injured worker "at the time of the injury." § 8–42–102(2). Other forms of remuneration addressed in the default provision include per diem, piecework, tonnage, commission, per mile, and casual employment. *Id.* Paragraphs (a) through (f) describe in detail how the various forms of compensation are converted to a weekly wage and then to an average wage. *Id.* The default provision is expressly subordinated or made subject to the discretionary exception. *See* § 8–42–102(2) (stating that the default provision applies "except as provided in this section").

■ The discretionary exception in subsection (3) provides:

> Where the foregoing methods [set forth in subsection (2) ] of computing the average weekly wage of the employee … will not fairly compute the average weekly wage, the division [of workers' compensation], in each particular case, may compute the average weekly wage in such other manner and by such method as will, in the opinion of the director [of the division of workers' compensation] based on the facts presented, fairly determine such employee's average weekly wage.

§ 8–42–102(3). The director of the division of workers' compensation has delegated his authority to hold hearings and determine an employee's AWW to the ALJ. *See Coates, Reid & Waldron v. Vigil,* 856 P.2d 850, 855 n. 6 (Colo.1993). Although the default provision

is tied to the injured worker's AWW at the time of the injury, the discretionary exception is not so limited.

The AWW has been the basis for computing benefits since the enactment of the workers' compensation statute in 1919. Likewise, there has been a default provision and a discretionary exception for calculating the AWW since the beginning. Ch. 210, sec. 47(b) and (c), 1919 Colo. Sess. Laws 716–17.

The present statute, however, was enacted by a citizen initiative adopted by the voters in the 1936 general election. Ch. 275, 1937 Colo. Sess. Laws 1380, 1383. Although it has been re-codified and relocated within the Colorado Revised Statutes over the years, the substance of the 1936 law has not been changed. The history of the 1936 initiative makes it clear that it was enacted to remedy inequities perceived in the original statute and that it was intended to provide the agency decision-maker broad discretion to determine a fair AWW when the default provision caused an unfair result.

In the original 1919 law, the AWW was tied to the injured worker's earnings at the time of the "accident," not the time of "injury" as in the present statute. The default provision for calculating the AWW was based on the worker's earnings during the six months preceding the accident. Ch. 210, sec. 47(b), 1919 Colo. Sess. Laws 716. The default provision neither addressed different methods of remuneration nor explained how those various types of compensation would be converted to an AWW, as the present statute does.

Then, as now, however, there was a discretionary exception to the default provision of calculating an employee's AWW. It allowed the Industrial Commission, the state agency charged with enforcing the workers' compensation law at the time, to determine an employee's AWW in "such other manner and by such other method as will in the opinion of the Commission, based upon the facts presented, fairly determine such [worker's] average weekly wage." Ch. 210, sec. 47(c), 1919 Colo. Sess. Laws, 717.

In the years after the original 1919 codification, the default provision was tested in a

variety of fact situations. Instead of allowing the Commission to rely on the discretionary exception to fairly compute AWWs based on the facts of the cases, this court and the General Assembly attempted to tightly control the Commission's discretion.

Although this court acknowledged that the statute vested discretion in the Commission, it expressed concern with "the almost uncontrolled, indefinite, and uncertain methods of [the discretionary exception]." *Employers' Mut. Ins. Co. v. Indus. Comm'n of Colo.*, 74 Colo. 201, 204, 219 P. 1078, 1080 (1923) ("*Employers' Mutual I* "). The second opinion in this early case demonstrates this court's unwillingness to defer to the Commission's discretion to compute an AWW when a worker injured in a mine was employed part-time and paid a daily wage. *Indus. Comm'n of Colo. v. Employers' Mut. Ins. Co.*, 76 Colo. 145, 230 P. 114 (1924) ("*Employers' Mutual II* "). In its second opinion, this court cited the exception as vesting discretion in the Commission to "compute the average weekly wage in accordance with clause (c) of the same section [i.e., the discretionary exception], 'by taking the daily earnings at the time of the accident'" in certain circumstances. *Id.* at 147, 230 P. at 114. Immediately after, however, this court ignored the discretionary exception and instead carried out its own detailed calculation and directed the Commission to award the claimant a specific monetary amount. *Id.* at 147, 230 P. at 114–15.

The Commission, in *Employers' Mutual II*, had employed the discretionary exception to adjust for the worker's part-time status and awarded the claimant an AWW exceeding $20 per week—which yielded the maximum benefit award at that time of ten dollars per week—based on the daily wages the worker was earning. *Id.* at 146, 230 P. at 114. This court responded by discarding the Commission's discretionary determination and making its own precise calculation, picking out specific days the employee had worked and averaging them, to assess the AWW at $9.81 per week—yielding the minimum award allowed, five dollars per week. *Id.* In doing so, this court preempted the Commission's exercise of discretion even

while citing the statute authorizing the Commission's discretion. In addition, this court found that awards calculated under the discretionary exception must arrive at an AWW through a mathematical calculation rather than any "other method" allowed by the statute, stating, as it overturned the Commission's award, "We are not acquainted with any mathematical process by which the available facts can be made to produce any such result." *Id.* (citation omitted).

After the *Employers' Mutual II* opinion was issued, the Commission protested that this court had "practically nullified the ordinary effect of" the discretionary exception by mandating specific formulas and awards when the default provision resulted in an unfair result. Thomas Annear et al., *Tenth Report of the Industrial Commission of Colorado* 12 (1928).

Throughout the 1920s and early 1930s, the General Assembly ignored repeated calls by the Commission to amend both the default and discretionary sections and remained committed to the rigid calculation that averaged an injured worker's earnings over the preceding period before the accident. In 1929, the legislature curtailed the Commission's powers even further. It retained the same default provision, merely amending the law to average a claimant's salary over the preceding year, as opposed to the preceding six months in the original calculation. Ch. 186, sec. 2, § 47(b), 1929 Colo. Sess. Laws 649. Concurrently, the General Assembly reduced the Commission's discretion in two ways. It declined to amend the discretionary exception and legislatively overrule this court's decisions despite the Commission's complaints that the court had all but stripped away its practical effect. In addition, when amending the default provision, the General Assembly removed the phrase "except as hereinafter provided," so that the default provision was no longer subordinate to the discretionary exception. *Id.*

The Commission condemned the increased rigidity imposed by the legislature, describing the amendment as removing the little discretion that it had possessed in administering workers' compensation. Thomas Annear et al., *Twelfth Report of the Industrial*

*Commission of Colorado* 9 (1933). Viewing the discretion as vital to administering workers' compensation claims, the Commission stated that the lack of discretion "in many cases fails to do justice to an injured employe [sic]." *Id.*

After the General Assembly failed to implement the Commission's repeated suggestions, labor advocates drafted the 1936 ballot initiative that would reestablish and strengthen the Commission's discretion to set an injured worker's AWW. *See* Roscoe Fleming, *Two Welfare Amendments On Ballot for November 3,* Rocky Mountain News, October 20, 1936, at 1. The ballot initiative, which passed by a vote of 203,195 "YES" to 114,733 "NO" votes, Ch. 275, 1937 Colo. Sess. Laws 1383, made significant changes to both the default provision and the discretionary exception. First, the initiative removed the "accident" as the frame of reference in calculating the AWW, replacing it with the broader term "injury" as the general starting point. *Id.* at 1381. It also amended the default provision from looking backward to calculate the AWW based on the claimant's earnings over the preceding year to a snapshot AWW fixed on the claimant's wage at the time of the injury. *Id.*

◼ More importantly for purposes of the present case, the initiative also reinstated the Commission's discretion in various ways. First, it laid out a variety of standard methods the Commission could use to calculate the AWW depending on whether the employee is paid monthly, weekly, hourly, by piecework, on commission, or per mile. *Id.* at 1381–82; *see* § 8–42–102(2)(a)–(f). Second, it reinserted qualifying language into the default provision, again making it subservient to the discretionary exception. Ch. 275, sec. 1, § 47, 1937 Colo. Sess. Laws 1381. Finally, it deleted the clause "by taking the daily earnings at the time of the accident or compute it" from the discretionary exception, thereby removing any time limitation from the exception and leaving the Commission the discretion to determine "in such other manner and by such other method" as would fairly determine the claimant's proper AWW. *Id.* at 1383. Consequently, since the 1936 election, section 8–42–102 has vested broad

discretion in the Industrial Commission and its successor, the ALJ, to determine a fair AWW, which is not tied to the time of injury.

◼ Avalanche asserts that the current definition of "wages" controls the AWW because the term "average weekly wages" contains the term "wages" and the definition of "wages" is in the general definitions section of the statute. *See* § 8–40–201(19)(a), C.R.S. (2008) (defining "wages" as "the money rate at which the services rendered are recompensed under the contract of hire in force *at the time of the injury*" (emphasis added) ). We reject this argument because the general definitions only apply "unless the context otherwise requires," § 8–40–201, C.R.S. (2008), and the facial difference between the language of subsection (2) and subsection (3) provides such context. The default provision outlines the average weekly wage specifically "for the purpose of computing benefits" and "except as provided in this section." § 8–42–102(2). In addition, if the general definition of "wages" were intended to control the calculation of the AWW and limit section 8–42–102 entirely to wages earned at the time of the injury, there would be no reason for subsection (2) to state that the default provision specifically is tied to the time of the injury. The fact that the default provision contains this limitation, while the discretionary exception unambiguously lacks any restrictive language, indicates that the general definition of "wages" does not control in this context and was not intended to limit the discretionary exception. Accordingly, the general definition of "wages" does not limit the ALJ's discretion under the discretionary exception.

In the many years since the voters spoke in 1936, Colorado caselaw has consistently upheld the broad discretion afforded to the ALJ by the statutory language. This court upheld the Commission's discretion in *Coates, Reid & Waldron v. Vigil.* 856 P.2d at 858. That case involved a claimant who had suffered two separate injuries. After the ALJ determined the AWW via the default provision, basing it on the time of the later injury, *id.* at 852–53; *see* § 8–42–104(1), C.R.S. (2008), the court of appeals reversed, directing the ALJ to use the discretionary

exception and award the claimant an AWW based on a higher salary earned prior to the ultimate injury, *Coates*, 856 P.2d at 854. We affirmed the court of appeals' holding that the discretionary exception is appropriate to avoid an unjust result and allows the AWW to be based on a time other than that required by the default provision. *Id.* at 858. However, we also recognized that the discretion lies with the ALJ, not the reviewing court and the court of appeals had gone too far when it made its own determination of the AWW. *Id.* ("[T]he court of appeals erred in this instance when it substituted its own method of computing Vigil's average weekly wage for that of the ALJ, who has the technical expertise to determine the appropriate computational method to be used and where, as here, the relevant statute confers such discretion upon the ALJ.").

█ The court of appeals has upheld the breadth of the ALJ's discretion in a variety of circumstances.[1] Although many of these opinions were issued prior to 1991, when the General Assembly enacted a substantial statutory revision to the Workers' Compensation Act designed to make it function more automatically, these amendments left the discretionary exception unchanged. We have consistently regarded the General Assembly's decision not to alter a statute when it makes amendments to related statutes "as evidence of its acquiescence to the judicial construction of the terms in those opinions." *See City of Colorado Springs v. Powell*, 156 P.3d 461, 467 (Colo.2007) (citations omitted).

In one particular example cited by the ALJ in the present case, the court of appeals concluded that the discretionary exception allowed basing the AWW on the claimant's wage ten years after her original injury. *Campbell v. IBM Corp.*, 867 P.2d 77, 82 (Colo.App.1993). In that case, the claimant was first injured in 1979 and her condition

slowly deteriorated over the course of the next several years. *Id.* at 78–79. During that time, the claimant also received several promotions such that her salary at the end of the ten-year period, when she could no longer work, was substantially increased. *Id.* The court of appeals concluded that it would be manifestly unjust to base the claimant's AWW only on her substantially lower earnings at the time of the original injury, stating that "[a]lthough average weekly wage generally is determined from the employee's wage at the time of injury, ... if for any reason this general method will not render a fair computation of wages, the administrative tribunal has long been vested with discretionary authority to use an alternative method in determining a fair wage." *Id.* (internal citations omitted).

Moreover, contrary to Avalanche's contention, we are aware of no case since the voters spoke in 1936 that has limited the discretionary exception, either expressly or implicitly, to the time of the claimant's injury.

Avalanche disputes the caselaw. It first argues that *Coates* is limited to cases of multiple injuries under section 8–42–104(1). While it is true that the claimant suffered two injuries while working for the same employer, *Coates* is not limited as Avalanche suggests. Rather, *Coates* involved the same discretionary exception that we consider here. *See Coates*, 856 P.2d at 855–58. Avalanche also argues that, in *Coates*, we rejected a computation of benefits based on a time other than the default method. This is a misreading of the case. The *Coates* majority overturned the court of appeals' decision to substitute its AWW calculation for the ALJ's, and this court remanded for the ALJ to exercise his or her discretion without limiting it. *Id.* at 858. By contrast, the *Coates* dissent would have ordered the ALJ to calculate the claimant's AWW based on her earnings at the time of her first injury, which was the

1. *See, e.g., Univ. Park Holiday Inn v. Brien*, 868 P.2d 1164, 1166 (Colo.App.1994) (finding "no error in the ALJ's determination to compensate the disability based on the claimant's post-disability wage rate"); *Drywall Prods. v. Constuble*, 832 P.2d 957, 959–60 (Colo.App.1991) (affirming the ALJ's estimation of future earnings as a basis for calculating claimant's AWW); *R.J.S. Painting v. Indus. Comm'n*, 732 P.2d 239, 241 (Colo.App. 1986) (affirming the ALJ's decision to set aside the contract of hire in force at the time of the injury and instead apply the discretionary exception to *lower* the award where the default statute overstated the claimant's AWW); *W. Sizzlin Steak House v. Axton*, 701 P.2d 96, 98 (Colo.App.1984) ("Under such circumstances, it is not for the commission or this court to substitute its judgment for that of the [ALJ].").

earlier, higher salary. *Id.* at 859–60 (Vollack, J. concurring in part and dissenting in part).

Next, Avalanche contends that *Campbell's* holding applies only to cases of occupational diseases and not cases of accidental injury, like Clark's injury here. This argument is refuted both by the *Campbell* holding and the statute itself. In *Campbell,* the court of appeals expressly stated that whether the claimant suffered an occupational disease or accidental injury was not determinative of the claimant's average weekly wage. 867 P.2d at 81. In addition, section 8–40–201, describes the term "injury" as including disability "resulting from *accident or occupational disease.*" § 8–40–201(2) (emphasis added).

Lastly, Avalanche points to four appellate cases, asserting that they require the discretionary determination to be tied to the time of the injury. None of these cases supports Avalanche's contention, however. Three of these four cases are irrelevant because they do not concern the discretionary exception. *See Sterling Colo. Beef v. Baca,* 699 P.2d 1347 (Colo.App.1985) (commenting on the default rule); *Bellendir v. Kezer,* 648 P.2d 645 (Colo.1982) (rejecting the argument that the workers' compensation statute violated due process and equal protection because it did not adjust awards for inflation); *Lyttle v. State Comp. Ins. Fund,* 137 Colo. 212, 322 P.2d 1049 (1958) (interpreting the term "wages" to conclude that an unpaid worker could not receive benefits). The fourth, *Dugan v. Industrial Commission,* 690 P.2d 267 (Colo.App.1984), merely stands for the principle that a claimant cannot receive the higher salary from an earlier job when injured at a later, lower-paying job, *see Coates,* 856 P.2d at 857 n. 8 (finding *Dugan* "readily distinguishable"), and that a claimant cannot receive an increased award under the discretionary exception when the claimant cannot prove that he or she was able to earn the higher wage, *see St. Mary's Church & Mission v. Indus. Comm'n of State of Colo.,* 735 P.2d 902, 904 (Colo.App.1986). This is consistent with our holding today that the ALJ can base an AWW on a salary that a claimant was actually earning when forced to stop working.

Avalanche finally advances a policy argument that a decision upholding the ALJ's discretion would result in a wave of reopened and increased AWWs, driving up the cost of resolving claims for employers and leading to the exception swallowing the default provision. This argument fails, however, because it neglects to consider the multiple limitations imposed by both the statute and this court on the discretionary exception. First, the statute and this court have limited the circumstances where a claimant can reopen his or her claim. *See* § 8–43–303(1), C.R.S. (2008) (restricting claimant's ability to reopen an award to within six years of the date of the injury and to situations where his or her physical or emotional condition worsens); *Lucero v. Climax Molybdenum Co.,* 732 P.2d 642, 643 (Colo.1987) (holding that statute does not allow a claimant to reopen an award simply because of a change in the claimant's *economic* condition). Second, the discretionary exception is limited to situations where the default provision "results in an injustice." *Coates,* 856 P.2d at 856. Finally, all benefit awards under the workers' compensation scheme cannot exceed the monetary maximum established by the statute. *See* § 8–42–105(1); § 8–42–111(1) (establishing the maximum benefit as ninety-one percent of the state average AWW, to be determined and published each year by the Director of the Division of Workers' Compensation pursuant to section 8–42–111(1) ).

### B.

In cases applying the discretionary exception, we review the ALJ's decision for an abuse of discretion, only reversing where it "exceed[ed] the bounds of reason" and was unsupported by applicable law. *Coates,* 856 P.2d at 856 (quoting *Rosenberg v. Bd. Of Educ. of Sch. Dist. No. 1,* 710 P.2d 1095, 1098–99 (Colo.1985)). In this case, we hold that the ALJ did not abuse his discretion. Clark continued working and significantly increased her salary between the time of the accident and her ultimate inability to work. For this reason, basing her AWW on the salary she had been earning at Avalanche at the time of accident would have yielded an unjust result. Consequently, the ALJ con-

sidered the salary Clark was earning at Blair College at the time the accident caused her to discontinue working. We conclude both of these discretionary decisions were reasonable and supported by the applicable law discussed above.

■ We also conclude that this discretion extends to the cost of continuing healthcare. First, we note that the general definition of "wages" "include[s] the amount of the employee's cost of continuing the employer's group health insurance plan and, upon termination of the continuation, the employee's cost of conversion to a similar or lesser insurance plan...." § 8–40–201(19)(b). Moreover, our recent decision in *Industrial Claim Appeals Office v. Ray*, 145 P.3d 661, 662 (Colo.2006), held the cost of such benefits is included in the calculation of the claimant's AWW, even when the claimant did not actually purchase COBRA health insurance from her employer after she was unable to work. As a result, inclusion of the claimant's COBRA cost in the AWW is generally determined by the default provision found in subsection (2)—cost at the time of the injury—unless the case's particular circumstances lead the ALJ to conclude that fairness requires the use of an alternative method of determining the cost of the COBRA benefits. When that discretion is invoked, the cost of health insurance is not tied to the time of the injury and is not precluded if the claimant did not previously elect coverage.

Accordingly, we conclude that the ALJ did not abuse his discretion by including the cost of COBRA benefits in the amount it would cost Clark to receive health care coverage from Blair College. The ALJ determined that the same policy reasons supporting consideration of the wages claimant earned at her subsequent employer also supported consideration of the cost to Clark of the subsequent employer's COBRA insurance. In order to take advantage of COBRA insurance, an eligible former employee must elect to begin coverage within sixty days of the "qualifying event," which is generally the end of the employment. *See* 42 U.S.C. § 300bb–5 (2006). Because she had stopped working for Avalanche years before, Clark could not elect to continue COBRA coverage through

Avalanche when forced to stop working at Blair College, even if she had wanted to do so. Therefore, it was reasonable for the ALJ to award her the costs of the only COBRA benefits available to her when she could no longer work—those of her most recent employer.

**C.**

Because the ICAO and court of appeals upheld the ALJ's determination of Clark's AWW via the discretionary exception, our discussion focuses on the issue of whether the discretionary exception is tied to the time of the injury, concluding that it is not. As a separate issue, we note that the ALJ's determination could similarly be affirmed under the default provision.

■ Avalanche is correct in its proposition that the default provision for calculating an AWW is tied to the time of injury. However, "[t]his still leaves the question of what is meant by 'time of injury.'" Arthur Larson & Lex K. Larson, *Larson's Worker's Compensation Law* § 93.01(1)(f) (2008). Larson's treatise identifies two main answers to that question, noting that some jurisdictions have held that "the time of injury means the time of disablement." *Id.* (citing *In re Correia*, 128 N.H. 717, 519 A.2d 263 (1986), *Pepsi Cola Bottling Co. of Tupelo, Inc. v. Long*, 362 So.2d 182 (Miss.1978), and *Johnson v. Director, Office of Workers Comp. Programs*, 911 F.2d 247 (9th Cir.1990)). Others, in contrast, have "held that the date of accident controls." *Id.* (citing *Bonnette v. Travelers Ins. Co.*, 367 So.2d 1261 (La.Ct. App.1979) and N.M. Stat. Ann. § 51–1–20(D)). Although Colorado's Workers' Compensation Act does not expressly answer this question, a reading of the statute indicates that the former rule controls.

In 1963, the General Assembly defined both "accident" and "injury," giving each a distinct definition. *See* Ch. 180, sec. 1, § 81–2–9, 1963 Colo. Sess. Laws 640; *see City of Boulder v. Payne*, 162 Colo. 345, 350, 426 P.2d 194, 196 (1967) ("Accident is the cause and [i]njury is the effect."). Over time, the definitions evolved, and the definition of "injury" was eventually removed altogether.

The current statute uses the terms interchangeably but maintains distinctions between the two. The definitions section defines the term "accident" as "an unforeseen event occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; or the effect of an unknown cause or, the cause, being known, an unprecedented consequence of it." § 8–40–201(1). The statute currently does not define the term "injury." However, section 8–40–201 does state that "injury," while not tied to the "unforeseen event," "includes disability or death *resulting from accident* or occupational disease." § 8–40–201(2), C.R.S. (2008) (emphasis added).

The lay definitions of the two terms also offer guidance. Webster's definition of "accident" resembles the statutory definition:

> (1) a happening that is not expected, foreseen, or intended (2) an unpleasant and unintended happening, sometimes resulting from negligence, that results in injury, loss, damage, etc.... (6) *Law* an unforeseen event that occurs without anyone's fault or negligence

*Webster's New College Dictionary* 8 (Michael Agnes et al. eds.2005) (emphasis in original). Much like the statutory definition, the common definition of "accident" describes a discrete event, one that "results in injury." *Id.* The "injury," caused by the accident, is "physical harm or damage to a person, property, etc." *Id.* at 736. By the common definitions, the time of an accident is distinct- the event itself. The injury, in contrast, occurs when someone experiences harm or damage.

The statutory language mirrors this distinction, with the "accident" occurring at a discrete event and "injury" as the disability resulting from that discrete event.[2] § 8–40–201(1), (2). Accordingly, if the AWW is tied to the "time of the injury," and the "injury" includes the "disability resulting from accident," then the "time of injury" necessarily includes the time of disablement, not only the time of the precipitating accident.

In the present case, Clark's ultimate disability occurred while she worked for Blair College at a higher salary. The ALJ could have construed her as having two injuries, one coinciding with the accident itself and a second when the accident ultimately resulted in Clark's physician taking her off work. In that case, the default provision would bind the AWW to the time of the second injury, *see* § 8–42–104(1) ("[T]he employee's average weekly earnings at the time of the later injury shall be used in determining the compensation payable to the employee....."), and the ALJ could have properly based Clark's AWW, including her cost of COBRA insurance, on her increased Blair College salary under the default provision.

## IV. CONCLUSION

While calculation of a claimant's AWW is *generally* tied to the time of injury, the discretionary exception affords an ALJ the discretion to determine a claimant's average weekly wage, including the claimant's cost for COBRA insurance, based not only on the claimant's wage at the time of the injury, but also on other relevant factors when the case's unique circumstances require. Here, the ALJ did not abuse his discretion when he determined the claimant's average weekly wage, including COBRA insurance, based on her increased earnings and insurance costs at a subsequent employer. We therefore affirm the court of appeals' decision.

Justice RICE dissents, and Justice EID joins in the dissent.

Justice COATS dissents, and Justice EID joins in the dissent.

Justice RICE, dissenting.

At issue in this case is an administrative law judge's ("ALJ") discretion to base an injured employee's compensation benefits in a reopened claim not on the worker's wage at the time he or she was injured, but rather on his or her wage at the time the claim is reopened. Unlike the majority, I view the

---

2. Only disabilities manifesting within five years are considered to be caused by the precipitating

accident. *See* § 8–41–206, C.R.S. (2008).

Workers' Compensation Act as providing a static snapshot of the worker's circumstances at the time of the injury. I would therefore reverse the court of appeals in this case and base the claimant's award on the salary earned at the time of the injury, and I thus respectfully dissent.

## I. Statutory History

Throughout the history of the Workers' Compensation Act, a claimant's benefits have been based on the injured employee's average weekly wage ("AWW"). Ch. 210, § 47, 1919 Colo. Sess. Laws 716–17. The AWW has consistently been calculated using the employee's wage earned at the time of the injury. As far back as 1919, an employee's "wages" were defined as the "money rate at which the services rendered are recompensed under the contract of hire in force at the time of the accident." *Id.* The statute originally provided a method for computing the AWW (summing the amount earned for six months before the accident and dividing by twenty-six), and allowed for the use of other computation methods if the prescribed method would not "fairly compute" the AWW. *Id.*

In 1936, the statute was modified to provide for calculation of the AWW for workers paid by the month, week, day, or hour. Despite this change, each provision still referenced the wage received at the time of the injury. The statutory framework continued to allow for some discretion where the specified mode of calculation would not fairly compute the AWW. Ch. 275, § 1, 1937 Colo. Sess. Laws 1380–83.

Over the past seventy years, the fundamental structure of the Workers' Compensation Act has remained virtually unchanged. *See, e.g.,* C.S.A.1935, ch. 97, § 326; § 81–8–1, C.R.S. (1953); § 81–8–1, C.R.S. (1963); § 8–47–101, C.R.S. (1973). The workers' compensation statutes were heavily revised in 1990, but the computation of benefits was not affected. *See* ch. 62, §§ 8–40–201(19), 8–42–102, 1990 Colo. Sess. Laws 470, 486–87.

Today, an employee's compensation under the statute is still calculated based upon the AWW. § 8–42–102(1), C.R.S. (2008). The term "wages" is still defined as the money earned by the employee at the time of the injury. § 8–40–201(19)(a), C.R.S. (2008). There are still different modes of calculation, depending on how often the employee is paid, and each mode refers to the employee's pay at the time of the injury. § 8–42–102(2)(a)–(d), C.R.S. (2008). The statute still allows for some discretion in cases where, because of the nature of the employment, because the employee has not worked long enough, or for any other reason, the listed methods of calculation will not fairly compute the AWW. § 8–42–102(3), C.R.S. (2008).

## II. Prior Interpretation

We have repeatedly interpreted the workers' compensation statutes consistently with their plain language, holding that the AWW is to be computed according to the wage received by the employee at the time of the injury.

When interpreting the term "wages" in order to calculate temporary disability awards, we have followed the General Assembly's direction that "where the word 'wages' is used ... it shall be construed to mean *'money rate* at which the services are recompensed under the contract of hire in force *at the time of the accident.'*" *Roeder v. Indus. Comm'n,* 97 Colo. 133, 135, 46 P.2d 898, 899 (1935) (emphasis in original).

Similarly, we have interpreted "earning capacity," (the former term for AWW in the temporary disability statute) to rely on the wages at the time of the injury. *State Comp. Ins. Fund v. Lyttle,* 151 Colo. 590, 593, 380 P.2d 62, 64 (1963) ("[T]he term 'earning capacity' ... must be related to the money rate at which the services are recompensed under the contract of hire at the time of the accident.").

We have explained the importance of consistency in calculating the AWW:

> In order to effectuate the [Workers' Compensation] Act's basic goals of speedy and reliable compensation of injured workers, the General Assembly has enacted a formula which calculates awards to an injured worker based on loss of earning power at the time of injury. The formula allows all parties involved to determine with some

degree of certainty the amount of compensation to which the worker is entitled. Not only does this certainty aid the parties in reaching prompt agreement on compensation issues, it also aids the state insurance compensation fund and other insurors in setting employer premiums.

*Bellendir v. Kezer,* 648 P.2d 645, 647 (Colo. 1982) (internal citations omitted).

Finally, as discussed more fully below, we held in *Coates, Reid & Waldron v. Vigil,* 856 P.2d 850, 855 (Colo.1993) that when an employee who has previously been injured suffers a second injury, "the claimant's disability benefits are derived from his or her [AWW] in effect at the time of the subject injury." Here, the majority, in advocating an expanded definition of AWW, relies in part on *Coates.* In my view, our decision in *Coates* makes clear that the computation of AWW must generally be made with reference to the compensation earned at the time of the disabling injury. The majority, in contrast, views *Coates* as a move away from basing the AWW on the employee's wage at the time of the injury.

A look at the statutory predecessor to the current version of section 8–42–104(1), C.R.S. (2008), and the way it has been interpreted, is supportive of my view of the proper scope of our *Coates* holding.[1]

The previous version of section 8–42–104(1) stated:

> The fact that an employee has suffered a previous disability or received compensation therefor shall not preclude compensation for a later injury or for death, but in determining compensation for the later injury or death, the employee's average weekly earnings shall be such sum as will reasonably represent the employee's average weekly earning capacity at the time of the later injury and shall be arrived at according to and subject to the limitations in [the predecessor statute to § 8–42–102].

Ch. 62, § 8–42–104(1), 1990 Colo. Sess. Laws 490.

The court of appeals in *Coates* misapplied this language. The ALJ concluded that in awarding permanent disability benefits to an employee who was injured on two separate occasions while working for the same employer, the AWW should be calculated based on the employee's income at the time the second injury occurred. The court of appeals reversed the ALJ's decision, holding that the AWW should have been calculated based on the employee's earnings at the time the first injury occurred. *Vigil v. Indus. Claim Appeals Office,* 841 P.2d 335 (Colo. App.1992), *aff'd in part and rev'd in part, Coates,* 856 P.2d at 858.

We affirmed the court of appeals' conclusion that ALJs are afforded discretion in calculating the AWW in cases where the prescribed method was unfair. However, we reversed the court's ruling that the ALJ's discretion should have been invoked to calculate the claimant's AWW based on her higher income at the time of her earlier injury. We warned that this discretion should only be invoked in the rare circumstances "where the standard statutory methods of computing a claimant's [AWW] work a gross inequity to the claimant," and we refused to authorize a computation of benefits divorced from the claimant's compensation at the time of the injury. *Coates,* 856 P.2d at 857. Thus, our analysis and conclusion in *Coates* fit squarely within the statutory framework that mandates computation of a claimant's AWW based upon his or her earnings at the time he or she was injured.

Our intention to stay within the statutory framework is further reinforced by the manner in which we distinguished *Dugan v. Industrial Commission,* 690 P.2d 267 (Colo. App.1984), where the claimant was injured two days after switching employers and taking a pay cut. The claimant wanted his AWW to be calculated based upon the higher wage he received from his previous employer, but the court of appeals refused, holding that it would be unfair to require his new employer to compensate him based upon a

---

1. This predecessor was the version of the statute at issue in *Coates.* For purposes of the issue at hand, the version in effect here is the same.

higher hourly wage than it paid him. We distinguished *Dugan* by stating:

> [T]he claimant [in *Dugan*] had not suffered any injury while employed in his higher-paid position, and only became injured after he had commenced working in the latter employment position; thus there was no evidence that, absent the single injury, he would have earned more than the amount of his wages at the later, lower-paying position.

*Coates*, 856 P.2d at 856 n. 8. Because the claimant in *Dugan* was not injured while receiving the higher wage, the ALJ did not have discretion to compute his AWW based upon that higher wage.

In sum, in cases where we and the court of appeals have approved an ALJ's discretionary modification of the default computation of a claimant's AWW, that computation has remained tied to the claimant's compensation at the time of the injury. *See Williams Bros. v. Grimm*, 88 Colo. 416, 297 P. 1003 (1931) (including in total time worked eleven weeks of "forced" vacation); *Drywall Products v. Constuble*, 832 P.2d 957 (Colo.App. 1991) (retroactively applying rate employee had begun to earn shortly before injury to avoid unfair underpayment of benefits); *R.J.S. Painting v. Indus. Comm'n*, 732 P.2d 239 (Colo.App.1986) (multiplying hourly rate earned at time of injury by actual hours worked per week instead of by forty hours); *W. Sizzlin Steak House v. Axton*, 701 P.2d 96 (Colo.App.1984) (same). In each of these cases, the ALJ strayed from the prescribed statutory method of calculating a claimant's AWW, but the calculation was nonetheless always tied to the claimant's compensation at the time of the injury.

Dismissing the consistent precedent described above, the majority in error relies on *Campbell v. IBM Corp.*, 867 P.2d 77 (Colo.App.1993). *Campbell* can easily be distinguished from this case. In *Campbell*, the claimant suffered from an occupational disease; in such cases, "the 'time of injury' is generally held to be the time of last exposure or onset of disability." *Campbell*, 867 P.2d at 81. Based upon that definition, it was not error for the ALJ to calculate the claimant's AWW with reference to her wages earned at

the time she became disabled—definitionally equivalent to the time of her injury. In this case, however, the claimant suffered from an accidental injury rather than an occupational disease. As such, the AWW should have been calculated based on the claimant's wages at the time of injury.

### III. Conclusion

Nothing less than the stability of the workers' compensation system is at risk in this case. Because I believe that the legislature clearly intended for the AWW to be calculated on the basis of the wages earned at the time of the claimant's injury in order to provide certainty to all parties involved, I respectfully dissent.

I am authorized to state Justice EID joins in this dissent.

Justice COATS, dissenting.

Because I disagree with the majority's construction of the controlling statutes and would, instead, reverse the judgment of the court of appeals, I respectfully dissent. I see little merit in attempting another point by point refutation of the majority's arguments, which I believe to have already been largely anticipated and effectively rebutted by the dissenting voice on the court of appeals. *See Avalanche Indus., Inc. v. Indus. Claim Appeals Office*, 166 P.3d 147 (Colo.App.2007) (Bernard, J., concurring in part and dissenting in part). I write separately, however, to identify what I consider to be the central problem with the majority's rationale and to emphasize the magnitude of its departure from the underlying philosophy of the workers' compensation scheme.

While our case law interpretations of the statutory scheme have long acknowledged great flexibility in the calculation of an injured employee's average weekly wage, they have never suggested that an award of compensation payments from an employer could be based on any wage or salary other than the employee's wage under his contract of employment with that employer. Fairness in the computation of an average weekly wage must account for variations in compensation plans, personal circumstances, and even

changes in the effects caused by an employee's injuries, but until today the scheme had not been construed to permit an award altogether unrelated to the rate at which the injured employee was recompensed by the employer ordered to pay it. Today, the majority finds it permissible (and perhaps even statutorily required) for an administrative officer to order a former employer to make compensation payments equal to a percentage of an injured employee's higher average wage, paid for services in a different job, acquired only after voluntarily leaving the former employer's employ, under a contract of employment with a completely different employer.

The majority seeks textual support in two very different places. First, it relies on a caveat to the general applicability of the statutory definitions, which include a definition of "wages," cautioning that they apply throughout the statutory scheme "unless the context otherwise requires." See § 8–40–201, C.R.S. (2008). Second, it defines an "injury" to occur only when the employee actually experiences a disablement, or increased disablement resulting from a worsening condition.

With regard to the former rationale, although "wages" are expressly defined to mean the rate at which the employee is recompensed under the contract of hire in force at the time of his injury, section 8–40–201(19)(a), C.R.S. (2008), the majority finds the statutory definition inapplicable whenever "fairness" in computing an average weekly wage would require otherwise. With regard to the latter, the majority finds that, in any event, where the ultimate disability occurs during a better-paid subsequent employment, as in this case, that disability could be treated as a second injury, requiring calculation of an average weekly wage at this higher rate, even according to statutorily prescribed methods. See § 8–42–102(2), C.R.S. (2008)

In light of the majority's newly minted definition of "injury," it is unclear to me why a presiding ALJ would ever have the discretion to treat a worsened disability as something other than a second and later "injury," which occurs under the later contract of employment. Furthermore, since the term "wages" by definition now refers to the rate at which the employee is recompensed under the contract of hire at the time of the employee's ultimate disability, disregarding the statutory definition as inapplicable would presumably be required in the interests of fairness only where payments calculated from the later salary would be unfair to the employee. Finally, however, if the employee's most recent injury does not even occur until his ultimate disability, it is unclear to me why any increased compensation to which he is entitled by his higher salary should not be paid by his employer at the time his second injury (that is to say, his ultimate disability) actually occurs.

Be all of that as it may, and notwithstanding my disagreements with the majority's reinterpretation of our case law and the historical development of the scheme, the central problem with the majority's construction is its rejection of the fundamental compromise upon which workers' compensation is premised: swift and certain entitlement by injured workers to a statutorily prescribed percentage of their wages in exchange for immunity from suit for civil damages. See Frank M. Hall & Co., Inc. v. Newsom, 125 P.3d 444, 446 (Colo.2005). Subjecting employers to liability for future wage contracts with different employers exposes them to damages for potential wage losses which they cannot foresee and over which they have no control.

If the General Assembly considered it reasonable and equitable to require employers to compensate injured employees according to their potential for future earnings, it could undoubtedly do so. In creating a plan for workers' compensation, however, it clearly rejected the fault, or tort, model. Although the statutory scheme contemplates reopening an order to account for worsening injuries, it most certainly does not permit a prediction of, or reopening an award to account for, increased earnings.

Defining the term "injury" so as to assign liability to former employers at wage levels attained only long after injured employees have left their employ reintroduces an element of civil damages, contrary to the principle upon which workers' compensation is based. Similarly, to construe the General

Assembly's allowance for flexibility in calculating an average weekly wage as permitting an administrative officer, based on his personal sense of fairness and equity, to overturn this fundamental choice overly strains credulity. Assuming that such an abdication could even be considered a valid delegation of legislative authority, it would truly amount to the proverbial exception that swallows the rule.

While I can appreciate the sentiment that it would be "unfair" to an injured worker not to account for her increased earning power by the time her injury has worsened and actually become incapacitating, it is arguably just as unfair to levee a former employer with compensation far beyond the wage he pays his employees. The statutory scheme attempts a solution to the problem of accidental workplace injury that is fair and manageable to both employees and employers. Unlike the majority, I do not believe that scheme should necessarily be construed to leave this delicate balance to the discretion of individual magistrates.

I therefore respectfully dissent.

I am authorized to state that Justice EID joins in this dissent.