25CA0977 Hargon v ICAO 01-22-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0977
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-267-135

Mary D. Hargon,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado, and Milvets Systems Technology, Inc.,

Respondents,

and

Twin City Fire Insurance Company,

Insurer-Respondent.

ORDER SET ASIDE AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 22, 2026

Elliott & Montgomery, Mark D. Elliott, Erin Montgomery, Arvada, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

The Law Offices of Annalisa N. Grant, Tiffany S. Kinder, Las Vegas, Nevada, for Respondent Milvets Systems Technology, Inc. and Insurer-Respondent Twin

City Fire Insurance Company

¶ 1 In this workers' compensation action, Mary D. Hargon seeks review of an order denying her request to increase the average weekly wage (AWW) amount on which her temporary disability benefits are predicated. We set aside the order and remand the case for further proceedings.

## I. Background

¶ 2 Since retiring from military intelligence with the United States Army in 2006, Hargon has worked as a contract intelligence analyst, performing discrete short-term contracts for various employers, including Milvets Systems Technology, Inc. (Employer). Each contract has lasted approximately two to three weeks. In February 2024, Hargon suffered a debilitating injury while performing such a contract for Employer.

¶ 3 Hargon opened a claim under Colorado's Workers' Compensation Act, and Employer filed an admission of general liability acknowledging Hargon earned an AWW of $123.10. Employer then began paying Hargon temporary total disability benefits based on that admitted AWW.

1

¶ 4       A few months later, Employer amended its admission of liability, increasing the admitted AWW to $382.65 based on records showing Hargon's pre-injury earnings from another employer, CSA Global, LLC. Employer accordingly adjusted the amount of temporary total disability benefits it paid Hargon. Even so, Hargon contended that the admitted AWW failed to fully capture her lost earnings and requested an evidentiary hearing on the issue.

¶ 5       At the hearing, an administrative law judge (ALJ) admitted into evidence Hargon's 2023 W-2 forms showing that Hargon earned $6,278.22 from Employer and $13,674.22 from CSA that year. Employer explained that the admitted AWW reflected the sum of these earnings ($19,952.44), divided by fifty-two weeks.[1] Employer argued this rate fairly compensated Hargon. Hargon testified that she had earned significantly more before the COVID-19 pandemic — approximately $40,000 annually — and that she expected to earn more in 2024 than she had in 2023. Hargon also explained

---

[1] We note that this equation produces an AWW amount of $383.70, rather than the admitted AWW of $382.65.

that, historically, she had earned more in even-numbered years. However, though post-pandemic, 2022 departed from that pattern because Russia's invasion of Ukraine compromised her work opportunities. Hargon testified that she anticipated working more intelligence projects in 2024 than she had in 2023, and that she also expected to work as a county election judge in 2024. Hargon also raised various legal arguments regarding the proper computation of her AWW.

¶ 6 After reviewing the evidence, the ALJ issued an order denying Hargon's request for an increased AWW. Citing section 8-42-102(2), C.R.S. 2025, the ALJ agreed with Employer that the admitted AWW fairly compensated Hargon. Hargon appealed to the Panel, which affirmed the ALJ's order.

## II. Standard of Review and Legal Principles

¶ 7 As relevant here, we may set aside the Panel's decision if the denial of benefits isn't supported by applicable law. § 8-43-308, C.R.S. 2025.

¶ 8     A claimant's AWW provides the basis upon which to compute total temporary disability benefit awards.  §§ 8-42-102(1), 8-42-105(1), C.R.S. 2025.  Subsections (2) and (3) of section 8-42-102 set forth alternative methods of computing an AWW.  *See Avalanche Indus., Inc. v. Clark*, 198 P.3d 589, 592 (Colo. 2008), *overruled in part on other grounds by Benchmark/Elite, Inc. v. Simpson*, 232 P.3d 777 (Colo. 2010).  Colorado courts describe subsection (2) as "the default provision" and subsection (3) as "the discretionary exception."  *Id.*

¶ 9     Under the default provision, the ALJ calculates the AWW "upon the monthly, weekly, daily, hourly, or other remuneration" the claimant received "at the time of the injury."  § 8-42-102(2).  That provision sets forth specific computation methods for each category of remuneration.  *Id.*  "Where the employee is being paid by the hour," for instance, "the weekly wage shall be determined by multiplying the hourly rate by the number of hours in a day during which the employee was working at the time of the injury" and then multiplying that number by the number of days (or fractions of

days) the employee worked weekly. § 8-42-102(2)(c)-(d).

Paragraph (e) of the default provision addresses calculating the

AWW when an employer compensates the employee for production

output, rather than time spent working. § 8-42-102(2)(e). It

requires the ALJ to review the claimant's total earnings in the

twelve months preceding the injury:

> Where the employee is paid on a piecework,
> tonnage, commission, or basis other than a
> monthly, weekly, daily, or hourly wage and
> where the employment is but casual and in the
> usual course of the trade, business,
> profession, or occupation of his employer, the
> total amount earned by the injured or killed
> employee in the twelve months preceding the
> injury shall be computed, which sum shall be
> divided by the number of pay periods the
> injured person was employed during the twelve
> months immediately preceding the injury, and
> the result thus ascertained shall be considered
> the average wage of said employee per pay
> period.

*Id.*

¶ 10    The discretionary exception in subsection (3) applies when,

due to the nature of the employee's work (among other possible

reasons), the computation methods prescribed in the default

provision "will not fairly compute the average weekly wage." § 8-42-102(3). In such circumstances, the ALJ "may compute the average weekly wage in such other manner and by such method as will . . . fairly determine such employee's average weekly wage." *Id.* Thus, the discretionary exception allows the ALJ broad discretion to determine a fair AWW when the default provision causes an unfair result. *Avalanche Indus.*, 198 P.3d at 592.

¶ 11 "In cases applying the discretionary exception, we review the ALJ's decision for an abuse of discretion, only reversing where it 'exceed[ed] the bounds of reason' and was unsupported by applicable law." *Id.* at 596 (quoting *Coates, Reid & Waldron v. Vigil*, 856 P.2d 850, 856 (Colo. 1993)).

III. The ALJ Erred in Applying the Default Provision

¶ 12 Hargon argues the Panel erred in affirming the ALJ's order because the ALJ misapplied the default provision. We agree.

¶ 13 At multiple points in his order, the ALJ made clear that he applied the default provision. He explicitly stated that "the default provision provides a fair approximation of [Hargon's] wage loss and

6

diminished earning capacity," and he later noted that the admitted AWW "aligns with the [default provision's] statutory purpose." Given these express statements, we disagree with the Panel that the ALJ "actually applied . . . the discretionary method."

¶ 14    In evaluating Hargon's request for an increased AWW, the ALJ considered her total earnings in the twelve months preceding her injury.  In doing so, it appears the ALJ applied paragraph (e) of the default provision.  But paragraph (e) applies only when a claimant's productivity determines their remuneration.  § 8-42-102(2)(e).  Hargon, however, received her pay based not on her productivity but rather on an hourly basis during the periods covered by her unique short-term contracts.  The default provision provides no computation method for this remuneration scenario.  *See* § 8-42-102(2).

¶ 15    While we agree with the Panel that the ALJ could have considered only Hargon's twelve-month earning history in computing her AWW if he had applied the discretionary exception, we can't say for certain that he would have done so when exercising

7

the broad discretion that the discretionary exception affords. Because only the discretionary exception applies under the circumstances here, and because the ALJ didn't apply it, the Panel erred as a matter of law in affirming the ALJ's order.

¶ 16　Accordingly, we set aside the Panel's order and remand the case to the Panel with instructions to remand to the ALJ to determine Hargon's AWW under the discretionary exception.[2]　Given our disposition, we need not reach the remaining issues that Hargon raises on appeal.

## IV.　Disposition

¶ 17　The Panel's order is set aside, and the case is remanded to the Panel with instructions to remand to the ALJ for a determination under section 8-42-102(3).

JUDGE FOX and JUDGE KUHN concur.

---

[2] On remand, the ALJ may exercise his discretion to consider evidence of Hargon's anticipated earnings when calculating her AWW.　*Drywall Prods. v. Constuble*, 832 P.2d 957, 959 (Colo. App. 1991).