Debra DILLARD, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and Pepsi Bottling Group, Respondents.

No. 04CA0680.

Colorado Court of Appeals, Div. IV.

June 2, 2005.

Rehearing Denied June 30, 2005.

Certiorari Granted Oct. 17, 2005.

Killian Guthro & Jensen, P.C., Joanna C. Jensen, Grand Junction, Colorado, for Petitioner.

John W. Suthers, Attorney General, Eric S. Rothaus, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Cairns Nemechek & McGruder, LLC, Gregory B. Cairns, Englewood, Colorado, for Respondent Pepsi Bottling Group.

Law Office of O'Toole & Sbarbaro, P.C., Neil D. O'Toole, Denver, Colorado; Frickey Law Firm, Janet Frickey, Lakewood, Colorado, for Amicus Curiae Workers' Compensation Education Association.

CASEBOLT, J.

Debra Dillard (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) determining that her claim for

temporary and permanent partial disability payments against her employer, Pepsi Bottling Group, is subject to the $60,000 benefit cap in § 8–42–107.5, C.R.S.2004. We affirm.

Claimant suffered an admitted work-related injury to her neck when she slipped and fell on ice in front of employer's building. She underwent two surgeries to her cervical spine and received treatment for depression resulting in part from the chronic pain she suffered after the injury. The treating physician rated claimant's permanent medical impairment at twenty percent of the whole person.

Claimant subsequently requested and underwent a division-sponsored independent medical examination (DIME). The DIME physician rated claimant's whole person impairment at twenty-three percent for the cervical spine and two percent for the left hip, which was damaged when a bone graft was taken from that location for the neck surgery. The DIME physician assigned a total whole person impairment rating of twenty-five percent to claimant's physical injuries.

The DIME physician also assigned a five-percent whole person mental impairment rating for claimant's depression. Combining the ratings for the physical and mental impairments, the DIME physician opined that claimant suffered a total permanent impairment rating of twenty-nine percent.

The administrative law judge (ALJ) concluded that employer had failed to overcome the DIME physician's rating. The ALJ further determined, however, that §§ 8–41–301(2)(b) and 8–42–107(7)(b), C.R.S.2004, did not authorize combining the mental impairment rating with the physical impairment rating in determining the applicable benefits cap. Therefore, the ALJ concluded that claimant suffered no more than a total of twenty-five percent permanent impairment and, thus, was subject to the $60,000 benefit cap under § 8–42–107.5.

The Panel affirmed application of the $60,000 cap. It determined that a rating for mental impairment may not be joined or merged with a nonscheduled impairment rating but is, instead, a distinct type of impairment that must be compensated separately under § 8–41–301(2), C.R.S.2004. The Panel also concluded that the plain language of § 8–42–107(7)(b)(III), C.R.S.2004, precluded the ALJ from combining a mental impairment rating with a nonscheduled physical impairment rating in determining whether claimant's whole person impairment exceeded the twenty-five percent cap contained in § 8–42–107.5.

The Panel alternatively determined that even if the term "combined," employed in § 8–42–107(7)(b)(I) and (III), C.R.S.2004, were ambiguous, the legislative history revealed that § 8–42–107.5 was designed to clarify that a mental impairment rating could not be combined with a physical impairment rating for purposes of exceeding the $60,000 benefit cap.

## I.

Claimant asserts that the ALJ and Panel erred in ruling that the whole person permanent impairment rating that she received for her physical injuries could not be combined with the whole person permanent impairment rating for her mental impairment in determining the maximum benefits she can receive under § 8–42–107.5. Because, in her view, her combined whole person rating for physical and mental impairment is twenty-nine percent, claimant argues that the applicable statutory cap is $120,000, not $60,000. We disagree.

The primary goal in construing a statute is to determine and give effect to the intent of the General Assembly. *McKinney v. Indus. Claim Appeals Office*, 894 P.2d 42 (Colo.App.1995). We must give effect to the General Assembly's purpose and intent as reflected in the plain language of the statute, and we do not depart from the plain meaning unless it leads to an absurd result. In addition, we read and consider the statutory scheme as a whole to give a consistent, harmonious, and sensible effect to all its parts. *Peregoy v. Indus. Claim Appeals Office*, 87 P.3d 261 (Colo.App.2004).

If the meaning of a statute is unclear, ambiguous, or uncertain as to its intended scope, with the result that the text lends itself to alternative constructions, the court

may consider the legislative history in interpreting the statute, including comments by legislators and others during discussions of the proposed legislation, the object sought to be attained by the legislation, and the circumstances under which the statute was enacted. *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, (Colo.1992); *McKinney v. Indus. Claim Appeals Office, supra*.

■ Courts traditionally give deference to the interpretation of a statute adopted by the officer or agency charged with its administration. *See Indus. Claim Appeals Office v. Orth*, 965 P.2d 1246 (Colo.1998).

Section 8–42–107.5 provides:

No claimant whose impairment rating is twenty-five percent or less may receive more than sixty thousand dollars from combined temporary disability payments and permanent partial disability payments. No claimant whose impairment rating is greater than twenty-five percent may receive more than one hundred twenty thousand dollars from combined temporary disability payments and permanent partial disability payments.

Thus, the benefit cap available to a claimant generally depends on whether his or her "impairment rating" is greater than twenty-five percent.

■ To determine the impairment rating that drives a disability award, it must first be determined whether the physical injury is a scheduled or nonscheduled injury. Section 8–42–107(1), C.R.S.2004, originally enacted in 1991, provides that a claimant is limited to a scheduled disability award if he or she suffers an injury or injuries described in the schedule set forth in § 8–42–107(2), C.R.S. 2004. Where a claimant suffers an injury not enumerated in § 8–42–107(2), the claimant is entitled to whole person impairment benefits under § 8–42–107(8), C.R.S.2004. *See Warthen v. Indus. Claim Appeals Office*, 100 P.3d 581 (Colo.App.2004).

In the case of mental impairment, § 8–41–301(2)(b) provides that the claimant shall be limited to twelve weeks of medical impairment benefits, inclusive of any temporary disability benefits.

For injuries occurring before July 1, 1999, *Mountain City Meat Co. v. Oqueda*, 919 P.2d 246 (Colo.1996), holds that when a work-related accident results in at least one injury listed on the schedule, and at least one injury not listed on the schedule, the scheduled injury shall be converted to a whole person impairment rating and combined with the nonscheduled rating, so that all effects of the accident are compensated as a single whole person impairment subject to the benefit caps in § 8–42–107.5. However, the General Assembly specifically overruled *Mountain City Meat* for injuries occurring after July 1, 1999, *see Warthen v. Indus. Claim Appeals Office, supra*, and enacted § 8–42–107(7)(b)(II), C.R.S.2004, to require that scheduled injuries be compensated as provided on the schedule and nonscheduled injuries be compensated as medical impairment benefits. Thus, the statute precludes the conversion of a scheduled disability rating to a whole person impairment rating.

Further, the General Assembly provided in 1999 that "mental or emotional stress shall be compensated pursuant to section 8–41–301(2) and shall not be combined with a scheduled or a nonscheduled injury." Section 8–42–107(7)(b)(I), (III).

Employer contends, and the Panel concluded, that, because a rating for mental impairment may not be joined or merged with a nonscheduled impairment and is a distinct type of impairment that must be compensated separately under § 8–41–301(2), a mental impairment rating may not be combined with a nonscheduled impairment rating to determine whether a claimant's whole person impairment exceeds twenty-five percent for purposes of determining the applicable benefits cap under § 8–42–107.5. Claimant asserts that such an argument ignores that the statutory provisions apply only to compensation, and she does not seek additional compensation for mental impairment, but only to increase the cap for physical disability by adding the mental impairment rating to her physical rating.

We conclude that the meaning of the statute is unclear or uncertain as to its intended scope. For that reason, we adopt the Panel's

alternative interpretation, which is supported by the legislative history.

In 1991, the General Assembly limited benefits payable in a mental impairment claim to twelve weeks as a cost control measure. *City of Thornton v. Replogle,* 888 P.2d 782 (Colo.1995). There is no dispute that one purpose of the 1999 legislative changes at issue here was to further limit compensation for mental or emotional stress allowable under § 8–41–301(2)(b). Another purpose was to make it clear that a mental impairment rating could not be combined with a physical impairment rating, because that combination could put a number of cases over the $60,000 cap that otherwise would not exceed the cap based on the physical impairment rating alone. Similarly, the opponents of the legislation explicitly recognized that the legislation would prevent an injured worker from combining a mental impairment rating with any other whole person impairment rating for purposes of exceeding the $60,000 benefit cap. *See* Hearings on H.C.R. 109 before the House Business Affairs & Labor Committee, 62d General Assembly, 1st Regular Session (Jan. 26, 1999) (tape 99–5–d); Hearings on H.C.R. 109 before the Senate State Veterans & Military Affairs Committee, 62d General Assembly, 1st Regular Session (Feb. 7, 1999) (tape 99–8–D).

■ Based on this legislative history and the purpose of the statutory changes, we agree with employer and the Panel that a mental impairment rating may not be combined with a nonscheduled impairment rating to determine whether a claimant's whole person impairment exceeds twenty-five percent for purposes of determining the applicable benefits cap under § 8–42–107.5.

The legislative history also refutes claimant's additional contentions that a contrary interpretation is mandated because: (1) impairment ratings must be calculated in accordance with the AMA Guides to the Evaluation of Permanent Impairment, which combine all impairments to express impairments of the "whole person"; (2) the Director of the Workers' Compensation Division has previously opined that ratings must be combined for purposes of determining the appropriate cap; and (3) Workers' Compen-

sation Rule of Procedure XIX(E)(4), 7 Code Colo. Regs. 1101–3, provides that a combined whole body permanent impairment rating may be determined by the rating physician.

Claimant also relies upon, and analogizes to, administrative decisions and the position of the Director of the Division of Workers' Compensation that allow scheduled impairment ratings to be converted to their equivalent whole person impairment ratings to determine the appropriate statutory cap. Claimant argues that a medical impairment rating for mental or emotional stress may in the same way be combined with the physical impairment rating to determine the applicable cap under § 8–42–107.5. We are not persuaded.

Those cases dealt only with combining physical impairments for purposes of determining the applicable cap. Here, claimant seeks combination of both mental and physical impairment. Hence, those decisions are distinguishable.

■ Accordingly, we conclude that the Panel correctly determined that § 8–42–107(7)(b)(III) precludes the ALJ from combining a claimant's mental impairment rating with the nonscheduled impairment rating to determine the applicable cap under § 8–42–107.5.

## II.

■ We reject claimant's assertion that the Panel's interpretation of §§ 8–42–107.5 and 8–42–107(7)(b)(III) violates her rights to equal protection and substantive due process.

■ A statute is presumed to be constitutional until shown otherwise. The party asserting the unconstitutionality of the statute bears the burden of proving its invalidity beyond a reasonable doubt. *Culver v. Ace Elec.,* 971 P.2d 641 (Colo.1999).

■ To violate the equal protection provisions of the federal and state constitutions, the classification must arbitrarily single out a group of persons for disparate treatment and not single out for such treatment other persons who are similarly situated. *Indus.*

*Claim Appeals Office v. Romero,* 912 P.2d 62 (Colo.1996); *see also Duran v. Indus. Claim Appeals Office,* 883 P.2d 477 (Colo.1994).

Here, even if the Panel's interpretation were to result in the disparate treatment of similarly situated individuals, we would conclude that such classification serves a legitimate purpose.

▌ The statutes at issue here survive an equal protection analysis if they are rationally related to a legitimate governmental purpose. *See Indus. Claim Appeals Office v. Romero, supra.* Further, if any conceivable set of facts would lead to the conclusion that a classification serves a legitimate purpose, a court must assume that those facts exist. *Alexander v. Indus. Claim Appeals Office,* 42 P.3d 46 (Colo.App.2001).

The General Assembly has broad discretion in enacting social welfare legislation, and the courts will not interfere in matters of legislative prerogative. *McKinney v. Indus. Claim Appeals Office, supra; see also Colo. AFL–CIO v. Donlon,* 914 P.2d 396 (Colo.App. 1995)(state has a legitimate interest in controlling the cost to employers of the workers' compensation system, and this interest is rationally promoted by measures which minimize the amount of money spent on claims that are not properly compensable under the Act).

Mental impairment claims have been subjected to a heightened burden of proof to help prevent frivolous or improper claims. *See* § 8–41–301(2)(a), C.R.S.2004 (claim of mental impairment without physical injury "consists of a psychologically traumatic event that is generally outside of a worker's usual experience and would evoke significant symptoms of distress in a worker in similar circumstances"); *Davison v. Indus. Claim Appeals Office,* 84 P.3d 1023 (Colo.2004)(mental impairment claims following solely an emotional trauma require testimony of a licensed physician or psychologist because they are less subject to direct proof and frivolous claims are more difficult to detect); *see also Colo. AFL–CIO v. Donlon, supra* (distinction between mental impairments caused in conjunction with a physical injury and those not resulting from such causes has long been recognized as proper).

Hence, the General Assembly could have reasonably decided to impose a limitation on the total amount of compensation received by a worker who has been partially impaired by mental or emotional stress. *Cf. City of Thornton v. Replogle, supra.* Thus, the Panel's interpretation of § 8–42–107.5 is consistent with the legislative goal to control workers' compensation costs in general, and specifically those resulting from some mental impairment claims.

For similar reasons, we conclude that this interpretation does not violate claimant's substantive due process rights.

Therefore, we conclude that §§ 8–42–107(7)(b) and 8–42–107.5 withstand constitutional scrutiny.

The order is affirmed.

Judge LOEB and Judge RUSSEL concur.