Richard SIMPSON, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado; Benchmark/Elite, Inc., and Colorado Insurance Guaranty Association, Respondents.

No. 07CA1581.

Colorado Court of Appeals, Div. III.

April 16, 2009.

As Modified on Denial of Rehearing June 25, 2009.

Chris Forsyth Law Office, LLC, Chris Forsyth, Denver, Colorado, for Petitioner.

John W. Suthers, Attorney General, Katie A. Allison, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office of the State of Colorado.

McElroy, Deutsch, Mulvaney & Carpenter, LLP, Thomas L. Kanan, Jr., Denver, Colorado, Lee & Kinder, LLC, Jeffrey M. Erickson, Denver, Colorado, for Respondents Benchmark/Elite, Inc., and Colorado Insurance Guaranty Association.

Opinion by Judge CASEBOLT.

In this workers' compensation proceeding, claimant, Richard Simpson, seeks review of the final order of the Industrial Claim Appeals Office (Panel), affirming the order of the administrative law judge (ALJ), finding that employer, Benchmark/Elite, Inc., and its current insurer, Colorado Insurance Guaranty Association (CIGA), had overpaid benefits to claimant and were entitled to credit for the overpayment. We affirm in part, set aside in part, and remand.

Claimant was injured in an admitted, work-related accident in April 2000. Benchmark was then insured by a carrier that later went bankrupt, requiring CIGA to take over the claim. Benchmark and its insurer (employer, collectively), admitted and paid temporary total disability (TTD) benefits and, later, benefits for permanent partial disability (PPD). Following claimant's receipt of Social Security disability benefits, employer admitted liability for permanent total disability (PTD) benefits.

Employer discovered that it had overpaid claimant for TTD and PPD, which apparently happened when duplicate payments were made by the two insuring entities. After claimant applied for and received a lump sum award for PTD, employer, through various admissions it filed, credited the lump sum amount against the overpayment. Claimant objected, asserted that his base PTD rate was wrongly computed, requested penalties, and sought a hearing.

The ALJ concluded that employer had overpaid benefits to claimant and approved the offset against the lump sum award. The ALJ allowed the remaining overpayment to be recovered over the next five years at a weekly rate. The ALJ held that claimant's PTD rate was correctly computed based on the state average weekly wage (AWW) rate in effect at the time of his injury, and declined to consider his request for penalties.

On review, the Panel affirmed, concluding that the ALJ had not misapplied the law in determining that employer had overpaid claimant and was entitled to reimbursement. The Panel further held that the Workers' Compensation Act (Act) does not provide for

an escalation of benefits from the maximum allowed under the state AWW amount in effect at the time of injury. The Panel also determined that substantial evidence supported the ALJ's finding that an overpayment had been made. Accordingly, the Panel held that any error the ALJ may have made by refusing to proceed on claimant's penalty issue was harmless. Claimant appeals the Panel's order.

While this appeal was pending, respondents withdrew their claim for recoupment of double payment of TTD benefits. While claimant accepted that withdrawal, he nevertheless continues to contend that an overpayment issue exists here. Accordingly, the discussion in parts I through VII below relates to any overpayment issue still remaining. Further, remand is required for the ALJ to modify the order to implement respondents' withdrawal of the claim for recoupment of double payments of TTD.

Following oral argument in this case, the supreme court decided *Avalanche Industries, Inc. v. Clark,* 198 P.3d 589 (Colo.2008). We requested supplemental briefs addressing the effect of that case here.

## I. Recovery of Overpayment

■ Claimant asserts that recovery of an overpayment arising from an employer's error is barred by case law. In particular, claimant argues that *HLJ Management Group, Inc. v. Kim,* 804 P.2d 250 (Colo.App. 1990), prohibits the retroactive reimbursement for an overpayment. We disagree.

*HLJ Management* held that, when an employer's mistake in an admission results from its own erroneous calculation and not, for example, from fraud, it cannot retroactively withdraw or modify the admission and is bound thereby, at least until an ALJ enters an order as to prospective payments. *Id.* at 253. However, in 1997, the General Assembly amended section 8–43–303(1) & (2)(a), C.R.S.2008, to permit reopening of an award on grounds of "overpayment," and specified that the reopening would not affect an earlier award as to money already paid "except in cases of overpayment."

As the Panel and employer note, *HLJ Management* was decided several years before the cited amendment to the Act permitted employers to reopen a claim on the basis of overpayment. Thus, at the time *HLJ Management* was announced, employers had no statutory means to review and recalculate payments made as they do under the version of the Act applicable here.

We therefore reject claimant's contention.

## II. Definition of Overpayment

■ Claimant nevertheless challenges the Panel's interpretation and application of the definition of "overpayment." He argues that overpayment means offsets that are provided by payments received from other disability plans such as Social Security disability and not sums that are erroneously paid by an employer. He contends that the statutory definition of overpayment specifically refers only to offsets that are defined in section 8–42–103, C.R.S.2008. We disagree.

Section 8–40–201(15.5), C.R.S.2008, defines an overpayment as:

> [M]oney received by a claimant that exceeds the amount that should have been paid, or which the claimant was not entitled to receive, or which results in duplicate benefits because of offsets that reduce disability or death benefits payable under said articles [articles 40 to 47 of title 8]. For an overpayment to result, it is not necessary that the overpayment exist at the time the claimant received disability or death benefits....

■ In interpreting a statute, we must "effectuate the intent and purpose of the General Assembly." *Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323, 326 (Colo.2004). We apply "the plain and ordinary meaning of the statute, if clear." *Id.* at 327. We also give deference to reasonable interpretations of a statute adopted by the agency charged with its administration. *Dillard v. Indus. Claim Appeals Office,* 121 P.3d 301, 304 (Colo.App.2005), *aff'd,* 134 P.3d 407 (Colo. 2006).

Claimant reads the statutory language "because of offsets that reduce disability or death benefits payable under said articles" to

apply to all three categories of overpayments. However, he reads the definition too narrowly. Claimant's interpretation would require us to ignore the plain meaning of the word "or" in the statute that delineates separate categories of overpayments. The statute makes clear that the phrases are disjunctive such that three categories of possible overpayment are included in the statutory definition: one category is for overpayments created when a claimant receives money "that exceeds the amount that should have been paid"; the second category is for money received that a "claimant was not entitled to receive"; and the final category is for money received that "results in duplicate benefits because of offsets that reduce disability or death benefits" payable under articles 40 to 47 of title 8. § 8–40–201(15.5).

This statutory construction is also consistent with section 2–4–214, C.R.S.2008, which repudiates the last antecedent rule as a presumed rule of statutory construction. *See Bd. of County Comm'rs v. City of Aurora*, 62 P.3d 1049, 1055–56 (Colo.App.2002) (last antecedent rule, which holds that relative and qualifying words and phrases, where no contrary intention appears, are construed to refer solely to the last antecedent with which they are closely connected, has not been adopted by the General Assembly and does not create a presumption of statutory intent). We are not presuming that the last antecedent rule applies here. We simply conclude that the use of the disjunctive "or" in the statute plainly demarcates three different categories, only one of which involves statutory setoffs. *See Holliday v. Bestop, Inc.*, 23 P.3d 700, 705–07 (Colo.2001) (in interpreting penalty statute in workers' compensation case, disjunctive "or" creates different categories, and qualifying phrase in third category was applicable only to that phrase); *Bloomer v. Bd. of County Comm'rs*, 799 P.2d 942, 945–46 (Colo.1990) (disjunctive "or" plainly demarcates different categories), *overruled on other grounds by Bertrand v. Bd. of County Comm'rs*, 872 P.2d 223, 226 (Colo.1994).

And, contrary to claimant's request, given our determination that the meaning of the statutory definition of "overpayment" in section 8–40–201(15.5) is clear and unambiguous, we need not look to legislative history for additional guidance to interpret the statute. *See Anderson*, 102 P.3d at 327.

### III. CIGA Recovery

█ Claimant contends that CIGA is barred by section 10–4–511, C.R.S.2008, from recovering an overpayment from him because CIGA may not pursue a "cause of action against the insured of the insolvent insurer for any sums it has paid out." He also asserts that, before CIGA could take over the claim, the prior insurance carrier had to be dissolved under section 10–4–508, C.R.S.2008, and that, therefore, it was factually impossible for the previous carrier to have paid duplicate benefits, as the ALJ found. We decline to address these arguments, however, because claimant did not raise them before the Panel. *See Arenas v. Indus. Claim Appeals Office*, 8 P.3d 558, 561 (Colo.App.2000) (arguments not raised before the Panel will not be addressed for the first time on appeal).

### IV. Overpayment Calculation

Claimant argues that the ALJ failed to account for employer's deduction of the lump sum award from the total overpayment calculated. As he did before the Panel, claimant does not argue that the calculations were inaccurate, but instead asserts that this alleged omission in the ALJ's calculation permitted employer to "double dip" in receiving reimbursement for the overpayment. He also contends that the repayment schedule is unduly onerous. We are not persuaded.

The ALJ found, with record support, that claimant was overpaid as a result of two separate calculation errors. The ALJ set forth the basis for his calculations, noting the source of each monetary entry added to or subtracted from the benefits actually received by claimant, and specifically found that employer "took a credit of the overpayment against the lump sum." The lump sum award order expressly permitted employer to take such a credit.

The ALJ's calculations make clear that the amount of overpayment was determined by adding the excess benefits *actually paid* to

claimant. Because claimant never received the lump sum amount, this amount was not included in the sum of overpayments made to him. The ALJ therefore did not improperly calculate the overpayment. Hence, the ALJ's order does not permit employer to "double dip."

▮ Concerning claimant's assertion that the recoupment schedule is onerous, the ALJ has discretion to fashion a remedy, and claimant has not demonstrated any abuse of that discretion. *See La. Pac. Corp. v. Smith,* 881 P.2d 456, 457 (Colo.App.1994)(ALJ's schedule for recoupment of overpayment will not be disturbed absent an abuse of discretion).

## V. Offset

Relying upon *United Airlines, Inc. v. Industrial Claim Appeals Office,* 993 P.2d 1152, 1163–64 (Colo.2000), and *National Fruit Product v. Crespin,* 952 P.2d 1207, 1208 (Colo.App.1997), claimant argues that the ALJ improperly offset PTD benefits with PPD benefits. Those cases generally hold that, while both types of benefits compensate for a permanent loss of wages, the two benefits are payable in differing amounts, for essentially different periods and for different losses, and therefore a PPD award will not be deducted from a subsequent PTD award.

▮ While we agree that an employer may not offset against PTD benefits the amount of previously paid PPD benefits that were correctly due and owing, we are not persuaded that the ALJ's order authorized such an offset here. On the contrary, the ALJ noted that employer did not seek an offset of PPD benefits against future PTD benefits. Rather, the ALJ noted that employer had demonstrated that the PPD benefits claimant received were significantly higher than the amount due, and that claimant received duplicate payments. We therefore reject claimant's contention that the ALJ's order permitted offsets in violation of *United Airlines* or *National Fruit.*

## VI. Due Process

▮ Claimant next contends that the ALJ violated his due process rights by allowing employer to introduce evidence and make arguments concerning overpayment that had not been properly noticed for hearing. Essentially, claimant asserts that employer filed various admissions and agreed that the claim was closed for all nonmedical issues, never sought permission to reopen the issue of previously paid benefits, and surprised him with the overpayment contention. We perceive no due process violation.

▮ "The fundamental requisites of due process are notice and the opportunity to be heard." *Hendricks v. Indus. Claim Appeals Office,* 809 P.2d 1076, 1077 (Colo.App. 1990). In an administrative hearing turning on questions of fact, "due process requires that the parties be apprised of all the evidence to be submitted and considered, and that they be afforded a reasonable opportunity to confront adverse witnesses and to present evidence and argument in support of their position." *Id.*

Here, claimant's original and amended applications for hearing endorsed the issue of overpayment, as did employer's responses. Accordingly, he could not have been surprised that the issue arose at the hearing. In addition, the record makes clear that, despite claimant's stated surprise at the argument's inclusion in the scope of the hearing, he was afforded every opportunity to confront adverse witnesses, present evidence, and articulate his argument against employer's position. He did not request a continuance or a reopening of the hearing, did not contend that any evidence remained to be presented that might affect the outcome, offered no witnesses of his own, cross-examined the CIGA adjuster at length, and was afforded the opportunity to present his position statement two weeks after employer submitted its statement, specifically so that he would have an opportunity to review the argument and address it in his brief. These procedural safeguards adequately protected claimant's right to present his case.

We therefore conclude that claimant was not denied his right to due process. *See Delaney v. Indus. Claim Appeals Office,* 30 P.3d 691, 693–94 (Colo.App.2000).

### VII. Payment Pursuant to Admission

■ Claimant contends that the ALJ's order allows employer to circumvent the Act and the Workers' Compensation Rules of Procedure because employer made the payments to him under an admission of liability. We disagree.

Claimant relies upon *Rocky Mountain Cardiology v. Industrial Claim Appeals Office*, 94 P.3d 1182, 1186 (Colo.App.2004), for the proposition that a payment made pursuant to an admission does not constitute an "overpayment" under the Act. In that case, the employer had suspended benefits after the employee failed to attend a medical appointment, but had failed to reinstate benefits once the employee attended a rescheduled appointment. The employer also sought to withdraw a previously filed admission of liability, contending that the claimant did not suffer a work-related injury.

A division of this court determined that the employer was bound by a previous admission of liability to pay benefits and was not entitled to withhold payment once the employee kept the rescheduled appointment. However, the employer sought relief only as of the date of the hearing and did not seek retroactive relief. The division concluded that the disputed payment did not constitute an "overpayment" under those circumstances.

Here, the ALJ found, with record support, that the previous insurance carrier was paying TTD benefits to claimant at the same time that CIGA was paying identical benefits. Thus, claimant received money he was not entitled to receive, in contrast to the employee in *Rocky Mountain*, who lawfully received benefits under an admission from which the employer sought only prospective relief.

Claimant nevertheless asserts that the ALJ's order violates Rule 5–9 of the Workers' Compensation Rules of Procedure, 7 Code Colo. Regs. 1101–3 at 18, which provides that, within thirty days after filing a final admission of liability, the insurer may amend the admission on the basis that an error exists because of miscalculation, omission, clerical error, or misapplication of the statute. We again disagree.

Like the Panel, we construe the rule to provide an opportunity to the insurer to revise an admission because of an error that the insurer has noticed or that the claimant brings to its attention and not to prevent the insurer from recovering an overpayment in a situation, such as here, where the claim has been reopened and the insurer files a new admission admitting for PTD benefits. We do not construe the rule to absolutely prohibit a claim for repayment when a mistake is discovered beyond the thirty-day period. Otherwise, the rule would contravene the provisions of section 8–43–303, which allows reopening any time within six years after the date of injury when there is an overpayment.

### VIII. PTD Calculation

Claimant also challenges the Panel's interpretation of the statutory scheme as limiting the amount of PTD benefits he is entitled to receive. Specifically, he argues that the ALJ and the Panel have misinterpreted the applicable statutes and erroneously have imposed a statutory cap on his PTD benefit rate. He contends that he is entitled to an increase in the rate of his PTD benefit up to two-thirds of the level of his actual AWW. We agree that the ALJ must reconsider this issue.

The Act specifies the manner by which PTD and TTD benefits are to be calculated. Under the Act, a PTD award "shall be sixty-six and two-thirds percent of the average weekly wages of the injured employee ... but not in excess of the weekly maximum benefits specified in this article for injuries causing temporary total disability." § 8–42–111(1), C.R.S.2008. However, benefits may not exceed "ninety-one percent of the state average weekly wage per week." § 8–42–105(1), C.R.S.2008.

The state AWW is calculated annually by the director of the division of workers' compensation, and must be:

> determined from the average weekly earnings referenced in section 8–73–102(1), computed by the division in June on the basis of the most recent available figures, and applicable to the ensuing twelve months beginning July 1. Such state average weekly wage shall automatically form the basis for establishing

maximum benefits under the "Workers' Compensation Act of Colorado" as of 12:01 a.m., July 1, 1974, and at each succeeding time and date annually thereafter.

§ 8–47–106, C.R.S.2008.

Claimant's undisputed AWW at the time of his initial injury was $1050. Pursuant to section 8–42–111(1), claimant's compensable PTD rate was calculated at sixty-six and two-thirds percent of that amount, or $700, but for the benefits cap of ninety-one percent of the state AWW. Thus, claimant's PTD benefits were limited to $559.23, which was ninety-one percent of $614.53, the state AWW at the time of claimant's initial injury.

However, in *Avalanche Industries,* the court determined that, while the provision for calculating AWW is tied to the time of injury, the statute should be read to mean that the time of injury includes the time of disablement, not only the time of the precipitating accident. 198 P.3d at 597–98. Reasoning from that conclusion, the court held that a claimant may have two injuries: one occurring at the time of the accident, and a second when the accident ultimately results in the claimant's disablement. It further noted that, under section 8–42–104(1), C.R.S.2008, the employee's average weekly earnings at the time of the later injury must be used in determining the compensation payable to the employee. *Id.* at 598.

But in *Avalanche Industries,* several events other than the mere passage of time had occurred between the accident and the time the claimant became unable to work. Her original claim was closed and she changed jobs and began to earn a substantially greater wage. She continued to work for several years before her condition worsened and she became too disabled to continue working. It appears that these events, which show a change or changes in her condition rather than the mere passage of time, led the supreme court to hold that the ALJ "could have construed her as having two injuries." *Id.* While the supreme court did not mention these factors in stating its alternative holding in the *Avalanche Industries* opinion, the holding that a separate injury could have occurred at the time of disablement cannot

be read independently from the facts of the case.

We conclude that the events occurring between the accident and the time of disablement are significant because disablement may occur at the time of the accident, but in some cases, it may occur long after. If the mere passage of time justified finding that a second injury occurred at the time of disablement, then we would be mandated to hold as a matter of law that a second injury necessarily occurs at the time of the adjudication of disablement. We do not discern the supreme court had such an intent in *Avalanche Industries.*

Neither the ALJ nor the Panel had the benefit of the court's opinion in *Avalanche Industries* at the time of their respective rulings in this case.

■ We conclude that, under *Avalanche Industries,* claimant is entitled to have his benefits for PTD capped at ninety-one percent of the state AWW that was in effect at "the time of his disablement." However, contrary to claimant's contention, we conclude that this presents an issue of fact that the ALJ must determine, because claimant could have become disabled at the time of his initial accident, or at some point thereafter, depending on the facts and circumstances. Accordingly, we must remand to the ALJ to determine the time of claimant's disablement under *Avalanche Industries,* and the state AWW that was in effect at that particular time. *See Campbell v. IBM Corp.,* 867 P.2d 77, 82 (Colo.App.1993) (AWW is generally calculated at the time of a claimant's injury); *see also* § 8–40–201(19)(a), C.R.S.2008 (" 'Wages' shall be construed to mean the money rate at which the services rendered are recompensed under the contract of hire in force at the time of the injury . . . ."); § 8–42–102(2), C.R.S.2008 (a claimant's average weekly wage, for the purpose of computing benefits, is calculated on the remuneration that the injured employee was receiving at the time of the injury); *Sterling Colo. Beef v. Baca,* 699 P.2d 1347, 1348 (Colo.App.1985) (it is clear that the legislative intent was to use the average weekly wage at the time of

the injury as the basis for determining benefits throughout the Act).

Claimant asserts, however, that he is also entitled to yearly adjustments in his benefits based on the change in the state AWW each year. He points out that § 8–47–106 provides the state AWW established on July 1 of each year is applicable for "the ensuing twelve months," which he argues should be construed to mean that this AWW applies to *benefits* that are payable during the "ensuing twelve months" rather than to *injuries* which occur during the "ensuing twelve months." He therefore contends that, because the state AWW is recalculated every year, he should not be limited "ad infinitum" to the benefit cap in place at the time of his injury.

Claimant argues that the legislature's exclusion of a statutory provision specifically capping benefits at the amount calculated at the time of the injury suggests that the General Assembly intended a claimant's AWW be recalculated as the state AWW increases annually. In support of this statutory interpretation, claimant points to section 8–42–102(4), C.R.S.2008, which provides that compensation to minors permanently injured on the job "shall be paid at the maximum rate of compensation payable under [the Act] at the time of the determination of such permanency." He argues that if the legislature had intended the state AWW calculated at the time of injury to apply "ad infinitum," it would have so stated.

Claimant's proffered statutory interpretation would require annual recalculation of the PTD benefits of each and every claimant whose AWW is determined by the state average. However, the Act contains no provision mandating annual recalculations, and we are not at liberty to read such a provision into the statute. *Kraus v. Artcraft Sign Co.*, 710 P.2d 480, 482 (Colo.1985) ("We have uniformly held that a court should not read nonexistent provisions into the Colorado Workmen's Compensation Act."). Indeed, a statutory construction that requires recalculating a claimant's AWW each year could even be against a claimant's interest if the state AWW were to decrease from one year to the next.

Claimant offers no citation to any case or Panel decision interpreting the statute in the manner he proposes. On the contrary, in an unrelated case, the Panel expressly rejected the interpretation claimant advances here. In *Salazar v. Nelson Pipeline Constructors*, W.C. No 4–213–910, 1998 WL 792539 at *3–5 (Oct. 29, 1998), *aff'd in part and rev'd in part sub nom. Salazar v. Indus. Claim Appeals Office*, 10 P.3d 666 (Colo.App.2000), the Panel held that a statutory construction that permits annual increases in benefits consistent with the unpredictable rise in the state AWW would create uncertainty for the award of future benefits that is inconsistent with the Act's goals of encouraging a climate of certainty conducive to settlements and the setting of premiums. In reaching its conclusion, the Panel relied in part on *Bellendir v. Kezer*, 648 P.2d 645, 647 (Colo.1982), which rejected a constitutional challenge to the Act's omission of an inflationary increase to benefits, effectively capping a claimant's benefits at the rate in place at the time of a claimant's injury. There, the court held:

> In order to effectuate the Act's basic goals of speedy and reliable compensation of injured workers, the General Assembly has enacted a formula which calculates awards to an injured worker based on loss of earning power at the time of injury. The formula allows all parties involved to determine with some degree of certainty the amount of compensation to which the worker is entitled. Not only does this certainty aid the parties in reaching prompt agreement on compensation issues, it also aids the state insurance compensation fund and other insur[e]rs in setting employer premiums.

*Id.* (citation omitted).

While we are not bound by Panel decisions, *Olivas–Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo.App.2006), we give deference to the Panel's reasonable interpretations of the statute it administers. *Dillard v. Indus. Claim Appeals Office*, 121 P.3d at 304. We conclude that the principles articulated by the Panel in *Salazar* and by the court in *Bellendir* are as relevant today as they were when announced. The statutory construction claimant proposes would ef-

fectively thwart the Act's stated goals of providing certainty to claimants, insurers, and employers alike by permitting unpredictable increases or decreases in benefits.

Moreover, no provision of the Act specifically permits an escalation of benefits of the type sought by claimant. Indeed, other than the statutory cost of living adjustment available to claimants under section 8–42–111(4), C.R.S.2008, we know of no measure in the Act that provides for an annual increase in benefits. "We may not read into a statute a provision not found in it." *Rook v. Indus. Claim Appeals Office,* 111 P.3d 549, 552 (Colo.App.2005). We therefore decline to interpret the statute as permitting an annual escalation of PTD benefits up to two-thirds of claimant's actual AWW.

Contrary to claimant's further contention, the opinion of a division of this court in *Salazar* did not set aside the part of the Panel's order that we have analyzed here. The division there analyzed a cost of living issue that is not present in this case.

### IX. Constitutional Vagueness

Assuming that we would reject his interpretation of section 8–47–106, claimant argues that it is unconstitutional because it is impermissibly vague as applied. We are not persuaded.

■ "When determining whether [a provision of the Act] is constitutional, we begin with the presumption that it is valid. Therefore, the burden is on claimant, as the challenging party, to prove the statute is unconstitutional beyond a reasonable doubt." *Peregoy v. Indus. Claim Appeals Office,* 87 P.3d 261, 265 (Colo.App.2004).

■ A statute violates due process protections when it forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess as to its meaning and differ as to its application. *Watso v. Colo. Dep't of Social Services,* 841 P.2d 299, 309 (Colo.1992). Statutes must contain language that provides fair notice of what conduct is prohibited and that provides enforcement authorities with sufficiently definite standards to ensure uniform, nondiscriminatory enforcement. *Id.*

■ In arguing that the statute is ambiguous, claimant relies exclusively upon the Panel's decision in *Salazar,* discussed above. There, the Panel noted that section 8–47–106 does not specify whether it applies to injuries occurring in the "ensuing twelve months" or to benefits payable in the ensuing twelve months. However, case law has long established that the parties' rights and liabilities under the Act are established at the time of injury. *Colo. Comp. Ins. Auth. v. Indus. Claim Appeals Office,* 907 P.2d 676, 678 (Colo.App.1995). The Panel acknowledged this precedent when it resolved the "arguable ambiguity" in section 8–47–106 by observing that disability benefit rates are determined at the time of injury.

In light of the well-established principle that the applicable provisions of the Act are determined at the time of a party's injury, we conclude that claimant has not met his burden of establishing beyond a reasonable doubt that section 8–47–106 is unconstitutionally vague as applied to him.

### X. Equal Protection

■ Claimant also contends that his right to equal protection is violated by statutorily capping his benefits as of the date of injury. We disagree.

■ Equal protection guarantees that similarly situated individuals will receive like treatment under the law. *Harris v. The Ark,* 810 P.2d 226, 229 (Colo.1991). Where, as here, the challenged statute does not affect a fundamental right or adversely affect a suspect class, a "traditional or rational basis standard of review" applies. *Id.* at 230. Under that test, "a statute that treats classes of persons differently will be upheld so long as the classification has a reasonable basis in fact—that is, the classification is based on differences that are real and not illusory— and is reasonably related to a legitimate governmental interest." *Id.*

In *Bellendir,* the supreme court rejected an equal protection challenge similar to that asserted by claimant here. In particular, the supreme court held that the Act's goal of ensuring "speedy and reliable compensation"

to injured workers was rationally related to the Act's benefit cap and omission of any escalation of benefits. Consequently, the court concluded that "the absence of an escalation of benefits provision applicable to individuals in the plaintiff's position violates no constitutional guarantee." *Bellendir*, 648 P.2d at 647. We perceive no reason to stray from *Bellendir's* constitutional determination and consequently reject claimant's equal protection challenge.

Based on claimant's failure to develop the issue in his opening brief, we reject his contention that capping his benefits constitutes an impermissible taking. *See Peregoy*, 87 P.3d at 265.

## XI. Penalties

Concerning claimant's contention that the ALJ improperly refused to proceed with his penalty issue at the hearing, because we conclude that employer did not commit a statutory violation in seeking reimbursement of the overpayment or in crediting the overpayment against the lump sum award, as permitted by the lump sum award order, any error the ALJ may have committed by excluding the issue was harmless. *See One Hour Cleaners v. Indus. Claim Appeals Office*, 914 P.2d 501, 505 (Colo.App.1995). Claimant was not entitled to any penalty under the circumstances. *See Pueblo Sch. Dist. No. 70 v. Toth*, 924 P.2d 1094, 1096–97 (Colo.App.1996) (party who violates a provision of the Act may be subject to penalties).

The order is set aside as to the amount of PTD benefits claimant is entitled to receive, and the case is remanded to the ALJ for further proceedings consistent with this opinion. The ALJ shall also modify the order to reflect and implement respondents' withdrawal of their claim for recoupment of double payments of TTD benefits. The ALJ may take supplemental evidence and argument in his discretion, or may, if the record allows, determine the time of claimant's dis-

* Sitting by assignment of the Chief Justice Under the provisions of Colo. Const. art. VI, § 5(3) and

ablement from the record alone. The order is affirmed in all other respects.

Judge LOEB and Judge NIETO * concur.