BENCHMARK/ELITE, INC., and
Colorado Insurance Guaranty
Association, Petitioners

v.

Richard SIMPSON, Respondent

And Concerning the Industrial
Claim Appeals Office.

City of Colorado Springs, Petitioner

v.

Steven Bennett, Respondent

And Concerning the Industrial
Claim Appeals Office.

Nos. 09SC586, 09SC769.

Supreme Court of Colorado,
En Banc.

June 1, 2010.

Rehearing Denied June 21, 2010.

Lee & Kinder, LLC, Thomas L. Kanan, Denver, Colorado, Attorneys for Petitioners Benchmark/Elite, Inc., and Colorado Insurance Guaranty Association.

Chris Forsyth Law Office, LLC, Chris Forsyth, Denver, Colorado, Attorneys for Respondent Richard Simpson.

John W. Suthers, Attorney General, Katie Allison, Assistant Attorney General, State Services Section, Denver, Colorado, Attorneys for Respondent the Industrial Claim Appeals Office in Case No. 09SC586.

Ritsema & Lyon, P.C., T. Paul Krueger II, Denver, Colorado, Attorneys for Petitioner City of Colorado Springs.

Steven U. Mullens, P.C., Steven U. Mullens, Pattie J. Ragland, Colorado Springs, Colorado, Attorneys for Respondent Steven Bennett.

John W. Suthers, Attorney General, A.A. Lee Hegner, Assistant Attorney General, Katie Allison, Assistant Attorney General, State Services Section, Denver, Colorado, Attorneys for Respondent the Industrial Claim Appeals Office in Case No. 09SC769.

Hall & Evans LLC, Frank M. Cavanaugh, Denver, Colorado, Attorneys for Amicus Curiae of Colorado Self–Insurers' Association in Case No. 09SC769.

Justice BENDER delivered the Opinion of the Court.

## I.   Introduction

In these consolidated cases, we review two opinions from the court of appeals addressing statutory limits on workers' compensation benefits. *Simpson v. Indus. Claim Appeals Office*, 219 P.3d 354 (Colo.App.2009); *Bennett v. Indus. Claim Appeals Office*, No. 08CA2179, slip op., 2009 WL 2469347 (Colo. App. Aug. 13, 2009) (not selected for official publication).[1]  In each case, the court of appeals held that the administrative law judge ("ALJ") should have limited the claimant's benefits according to the maximum rate in effect at the claimant's "time of injury." *Simpson*, 219 P.3d at 363–64; *Bennett*, slip op. at 9. In section III.C. of *Avalanche Industries, Inc. v. Clark*, 198 P.3d 589, 597–98 (Colo.2008), we held that the claimant's "time of injury" could refer either to the time of the accident or the time of disablement. Relying on *Avalanche Industries*, both divisions of the court of appeals concluded that a claimant is entitled to have his or her benefits calculated based on the applicable limit in effect at the time of disablement and remanded these cases to the ALJ to determine that time in each case. *Simpson*, 219 P.3d at 362; *Bennett*, slip op. at 9.

We hold that section III.C. of *Avalanche Industries*, which addressed the definition of "time of injury," was unnecessary to decide *Avalanche Industries*, and we overrule our holding in that case that a claimant's "time of injury" could mean either the time of accident or the time of disablement. Accordingly, we reverse the court of appeals' opinions to the extent those opinions interpreted the term "time of injury" to include the time of disablement, as set forth in section III.C. of *Avalanche Industries*. We vacate the court of appeals' orders to remand these cases to the ALJ to determine each claimant's time of disablement. We remand Simpson's case to the court of appeals to return his case to the ALJ to determine the remaining issue re-

garding double payment of temporary total disability benefits. *See Simpson*, 219 P.3d at 365. We remand Bennett's case to the court of appeals to reinstate the ALJ's order denying Bennett's requests for an increase in disability benefits.

## II.   Facts and Proceedings

### A.   Richard Simpson's Claim

Richard Simpson was injured in a work-related motor vehicle accident on April 25, 2000. He filed a workers' compensation claim and began receiving temporary total disability ("TTD") benefits on June 6, 2001. Simpson reached maximum medical improvement ("MMI") on November 19, 2001, and became eligible for permanent partial disability ("PPD") benefits. Even though Simpson reached MMI, he did not return to work. Simpson's condition worsened on May 5, 2004, and the parties agreed to reopen Simpson's claim. Simpson again received TTD benefits until November 19, 2005. The insurer admitted liability for permanent total disability ("PTD") benefits commencing on November 19, 2005.

The insurer set Simpson's PTD benefits at the maximum rate in effect at the time of his accident. Simpson objected to this rate and requested that the ALJ increase the rate to the maximum rate in effect at the time he became permanently and totally disabled.[2] The ALJ found in favor of the insurer and applied the lower maximum rate in effect at the time of the accident.

Simpson appealed the ALJ's decision to the Industrial Claim Appeals Office ("ICAO"). He argued that sections 8–42–111, 8–42–105, and 8–47–106, C.R.S. (2009), should not limit him "ad infinitum" to the maximum rate in place at the time of his accident. In other words, Simpson interpreted those provisions as meaning that the limit on workers' compensation benefits should be recalculated each year to reflect changes in

---

1.  In both cases, we granted certiorari to review the following question: "Whether the court of appeals erred in remanding for a determination on the claimant's 'time of disablement' for the purpose of setting the applicable statutory limit on claimant's workers' compensation benefits."

2.  The maximum rate in effect at the time of Simpson's accident on April 25, 2000, was $559.23 per week, whereas the maximum rate in effect at the time he was permanently and totally disabled on November 19, 2005, was $697.20 per week.

the maximum rate. The ICAO panel rejected this argument and affirmed the decision of the ALJ.

Simpson appealed the ICAO's decision to the court of appeals. While the case was pending at the court of appeals, we decided *Avalanche Industries*. The court of appeals requested supplemental briefs to address the effect of *Avalanche Industries* on Simpson's claim. Like the ICAO panel, the court of appeals rejected Simpson's statutory argument that a claimant's benefits should be recalculated each year to reflect changes in the maximum rate.[3] *Simpson*, 219 P.3d at 363–64. Nevertheless, the court of appeals gave Simpson some relief based on section III.C. of *Avalanche Industries*, which held that "time of injury" could mean time of disablement. The court of appeals held that the applicable limit on workers' compensation benefits was the maximum rate in effect at the claimant's "time of injury." *Id.* Relying on section III.C. of *Avalanche Industries*, the court of appeals held that a claimant is entitled to have his or her benefits calculated based on the applicable limit in effect at the time of disablement. *Id.* at 362. Thus, the court of appeals held Simpson might be eligible for a different maximum rate, depending on when Simpson became disabled. That court remanded the case to the ALJ to determine when the time of disablement occurred and what the applicable limit was at that time. *Id.*

### B. Steven Bennett's Claim

Steven Bennett was injured in a motorcycle accident on May 1, 1996, while working for the City of Colorado Springs ("the City"). The City admitted liability for TTD benefits at the maximum rate in effect at the time of his accident. Bennett was periodically disabled over the next few years and ultimately retired from the City on July 15, 2000. The City admitted liability for TTD benefits after July 16, 2000, at the maximum weekly rate in effect at the time of his accident. Bennett then began working as a construction supervisor for Hannon Homes, and the City terminated his TTD benefits. Bennett's condition worsened while he worked at this second employer, and the City again paid TTD benefits to Bennett. For the rest of his employment at Hannon Homes, the City alternated between paying TTD benefits and PPD benefits to Bennett. On March 19, 2007, the City admitted liability for PTD benefits, still capped at the maximum rate in effect at the time of Bennett's accident.

Bennett petitioned the ALJ to increase both his TTD benefits and his PTD benefits from the limit in place at the time of his accident to the limit in place at the time he became disabled.[4] The ALJ denied Bennett's requests to increase his TTD and PTD benefits. Bennett appealed this decision to the ICAO, and the ICAO affirmed the ALJ's decision.

Bennett then appealed to the court of appeals. Relying on *Avalanche Industries* and *Simpson*, the court of appeals reversed the ALJ and ICAO panel because "[t]he ALJ's conclusion contains no acknowledgement that the date of injury can include a subsequent disablement." *Bennett*, slip op. at 7–8. The court remanded the case to the ALJ to determine whether the claimant's injury includes disablement, when such disablement occurred, and which maximum rate was in effect at that time. *Id.* at 9.

### III. Analysis

### A. Calculating Workers' Compensation Benefits

The Workers' Compensation Act establishes a formula for calculating workers' compensation benefits that proceeds in two steps. First, the ALJ determines the employee's average weekly wages ("employee's AWW"), which serves as the basis for computing disability benefits. § 8–42–102, C.R.S. (2009). Second, the ALJ sets the award the claimant

---

3. Simpson made this same argument in his petition for certiorari, and we denied certiorari with respect to this issue.

4. The maximum rate in effect at the time of Bennett's accident on May 1, 1996, was $451.22 per week. This rate is less than the maximum rate in effect when Bennett became temporarily disabled on July 16, 2000, ($593.81 per week) or when he became permanently and totally disabled on March 19, 2007 ($719.74 per week).

will receive by statute, which depends in part upon the claimant's time of injury. *See, e.g.,* § 8–42–105 (awards for TTD benefits); § 8–42–111 (awards for PTD benefits). We review each of these steps in turn.

To determine an employee's AWW, the ALJ may choose from two different methods set forth in section 8–42–102. The first method, referred to as the "default provision," provides that an injured employee's AWW "be calculated upon the monthly, weekly, daily, hourly, or other remuneration which the injured or deceased employee was receiving at the time of injury." § 8–42–102(2). The default provision lists six different formulas for conducting this calculation, such as multiplying the monthly wage or salary at the time of the accident by twelve and then dividing by fifty-two. § 8–42–102(2)(a)–(f). The second method for calculating an employee's AWW, referred to as the "discretionary exception," applies when the default provision "will not fairly compute the [employee's AWW]." § 8–42–102(3). In such a circumstance, the ALJ has discretion to "compute the [AWW] of said employee in such other manner and by such other method as will, in the opinion of the director based upon the facts presented, fairly determine such employee's [AWW]." [5] *Id.*

After the ALJ determines the employee's AWW, either through the default provision or the discretionary exception, the ALJ applies the statutory limit on workers' compensation benefits and calculates the rate of the claimant's benefits. For both TTD and PTD benefits, this rate is the lesser of either sixty-six and two-thirds percent of the employee's AWW or ninety-one percent of the state's average weekly wage ("state AWW"). § 8–42–105 (awards for TTD benefits); § 8–42–111 (awards for PTD benefits); [6] § 8–47–106 (statute governing state AWW). The director of the Division of Workers' Compensa-

tion determines the state AWW on a yearly basis using the most recent figures about statewide average weekly earnings. § 8–47–106. We assume without deciding that the ALJ uses the state AWW in effect at the claimant's "time of injury." *See Simpson,* 219 P.3d at 363–64; *Pubanz v. State,* W.C. No. 3–070–168, 1997 WL 651414, at *3 (Colo. Indus. Claim Appeals Office Sept. 9, 1997) (holding that the state AWW established on July 1 of each year is intended to be the basis for determining the maximum benefit rate for all injuries that occur during the following twelve months). Because the state AWW trends upwards over time, the claimants stand to receive a higher maximum rate of benefits if the ALJ sets their time of injury at a later date. *See* 17 Douglas R. Phillips & Susan D. Phillips, *Colorado Practice Series: Colorado Workers' Compensation Practice and Procedure* § 6.2 (2d ed. 2005 & Supp. 2009) (listing the state AWW from July 1, 1991, to present). The divisions of the court of appeals interpreted *Avalanche Industries* to mean that the time of injury includes the time of disablement, which might occur later than the time of the accident. *Simpson,* 219 P.3d at 362; *Bennett,* slip op. at 8.

### B. *Avalanche Industries*

In 2008, we addressed whether an ALJ had discretion to base an employee's AWW on the salary and benefits the claimant received while working for a subsequent employer. *Avalanche Indus.,* 198 P.3d at 590. In that case, the claimant was injured in a work-related accident while employed at Avalanche Industries, Inc. *Id.* The claimant later worked for a second employer, which provided both health insurance and a higher salary. *Id.* at 591. While the claimant was at this second employer, her physical condi-

---

5. We note that the director of the Division of Workers' Compensation has delegated his authority to hold hearings and to determine an employee's AWW to the ALJ. *See Coates, Reid & Waldron v. Vigil,* 856 P.2d 850, 855 n. 6 (Colo. 1993).

6. The statute governing PTD benefits, section 8–42–111(1), cross-references the statutory limit for TTD benefits:

In cases of permanent total disability, the award shall be sixty-six and two-thirds percent of the average weekly wages of the injured employee and shall continue until death of such person so totally disabled but not in excess of the weekly maximum benefits specified in this article for injuries causing temporary total disability.

tion worsened and the ALJ reopened her workers' compensation claim. *Id.* The ALJ increased the claimant's AWW based on the compensation she received from her subsequent employer. *Id.* The court of appeals held that the ALJ possessed this authority. *Id.*

In sections III.A. and III.B. of *Avalanche Industries,* we affirmed the decision of the court of appeals and ALJ because the discretionary exception contained in section 8–42–102(3) is not tied to the time of injury and vests the ALJ with broad discretion to determine a fair amount for the employee's AWW. *Id.* at 591–597. We held that, under the facts presented, it was not an abuse of discretion for the ALJ to determine the claimant's AWW based on her increased salary and healthcare benefits at her subsequent employer. Id. at 596–97.

In section III.C. of the opinion, we discussed whether the ALJ's determination could have been similarly affirmed under the default provision. *Id.* at 597. When an ALJ determines an employee's AWW under the default provision, the calculation must be based upon the remuneration that the injured employee was receiving at the "time of injury." § 8–42–102(2). We explained that the statute governing the default provision left open the question as to what the term "time of injury" means. *Avalanche Indus.,* 198 P.3d at 597. We noted that other jurisdictions have interpreted this term to refer to either the time of the accident or the time of disablement. *Id.* Evaluating the statutory definitions and legislative history, we stated that the "time of injury" could mean either the time of the accident or the time of disablement. *Id.* at 598.

### C. Overruling Section III.C. of *Avalanche Industries*

Our review of these two cases causes us to revisit section III.C. of our opinion in *Avalanche Industries.* The discretionary exception gave us sufficient authority to uphold the decisions of the court of appeals and ALJ in that case. Therefore, we did not need to address the default provision or define the term "time of injury" to resolve that case. We recognized that section III.C. was unnec-

essary to affirm the decisions of the lower courts by prefacing section III.C. as follows: "As a separate issue, we note that the ALJ's determination *could be* similarly affirmed under the default provision." *Id.* at 597 (emphasis added).

Thus, section III.C. of *Avalanche Industries* was unnecessary to that decision, and we overrule our holding that the term "time of injury" could mean either the time of the accident or the time of disablement. *See McDaniel v. Sanchez,* 452 U.S. 130, 141–42, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981) (holding that a section in a prior opinion was unnecessary to resolve that case and therefore was not controlling in a subsequent case); *Young v. People,* 54 Colo. 293, 307, 130 P. 1011, 1016 (1913) (same). Our decision today does not alter the core holding of *Avalanche Industries,* which is that the discretionary exception allows an ALJ to compute an employee's AWW based on compensation received at a subsequent employer, provided the ALJ does not abuse his or her discretion. 198 P.3d at 591–97.

In the present cases, the court of appeals relied on section III.C. of *Avalanche Industries* to hold that the claimants were entitled to the maximum rate of benefits in effect at the time of disablement. *Simpson,* 219 P.3d at 362; *Bennett,* slip op. at 9. Because we overrule section III.C. of *Avalanche Industries,* we undermine the basis for the court of appeals' holdings.

### IV. Conclusion

Accordingly, we reverse the court of appeals' opinions to the extent those opinions interpreted the term "time of injury" to include the time of disablement, as set forth in section III.C. of *Avalanche Industries.* We vacate the court of appeals' orders to remand these cases to the ALJ to determine each claimant's time of disablement. We remand Simpson's case to the court of appeals to return his case to the ALJ to determine the remaining issue regarding double payment of TTD benefits. *See Simpson,* 219 P.3d at 365. We remand Bennett's case to the court of appeals to reinstate the ALJ's order denying

his requests for an increase in disability benefits.

Justice COATS specially concurs, and Justice EID joins in the special concurrence.

Justice COATS, specially concurring.

I concur in the court's decision to overrule section III.C. of its holding in *Avalanche Industries,* and I write separately only to emphasize that the remainder of the court's rationale in that case is not at issue here. I therefore do not understand the majority's opinion as in any way reaffirming it.

In *Avalanche Industries* I expressed my view that construing section 8–42–102 of the revised statutes to permit an administrative officer, based on his personal sense of fairness and equity, to disregard the statutory definition of average weekly wage and calculate a claimant's benefits on a wage he was receiving at some point after his injury, from a different employer altogether, was unjustified, *see Avalanche Industries Inc. v. Clark,* 198 P.3d 589, 598 (Colo.2008)(Coats, J., dissenting), and I continue to believe that to be the case. While I agree that section III.C. of that opinion should be overruled, I do not consider it unrelated to the remainder of the court's rationale. Because I believe the alternate rationale of section III.C. was included to bolster what was an extremely tenuous construction of the so-called "discretionary exception," I consider that portion of the *Avalanche Industries* rationale weakened by today's holding and worthy of reconsideration in an appropriate case.

I am authorized to state that Justice EID joins in this special concurrence.